**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

CASE NO.

JOHN HAYES,

    Plaintiff

v.

SKYWEST AIRLINES, INC.,

    Defendant

---

**COMPLAINT**

---

Plaintiff John Hayes, by and through his attorney Paul Maxon, states the following:

**JURISDICTION AND VENUE**

1. Plaintiff John Hayes is a Colorado resident. He resides at 5792 Raleigh Circle, Castle Rock, CO 80104 and is a former employee of Defendant. At all relevant times, he was a resident of Colorado.

2. Defendant is a Utah corporation that regularly conducts business within the State of Colorado.

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and §1343 and this action is authorized and instituted pursuant to 29 U.S.C. §626(c).

4. Venue is proper in this Court as the unlawful employment practices alleged were committed within the jurisdiction of the United States District Court for the District of Colorado.

5. Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission, which has concurrent jurisdiction with the Colorado Civil Rights Division, satisfying the requirements of 42 U.S.C. § 2000e-5, 29 U.S.C. § 626(d) and C.R.S. § 24-34-305.

6. On or about June 16, 2015, the United States Equal Employment Opportunity Commission issued a Notice of Right to Sue.

## FACTUAL ALLEGATIONS

7. Plaintiff John Hayes is a former long-term employee of Defendant SkyWest Airlines, where he worked from 2006 until 2014, when Defendant terminated his employment.

8. Mr. Hayes was an excellent employee. In his last two performance reviews, given in 2012 and 2013, his supervisors described him as an "exemplary model" for his co-workers, who was "exceptionally thorough," fostered a "strong, open work environment," and had a "strong connection to his fellow peers." Also praised were his "dedication and devotion" to Defendant's business and his "determin[ation] to make SkyWest in Denver the best." (Exhibit 1). One supervisor stated "on a day to day basis [Mr. Hayes] exemplifies the role model, mentor and guiding principles of SkyWest." (Exhibit 2).

9. Consistent with Defendant's glowing reviews of his performance, during his eight years of employment, Defendant promoted Mr. Hayes three different times.

10. Unfortunately, Mr. Hayes has kidney disease, technically referred to as "end stage renal disease as a result of polycystic kidney disease." (Exhibit 3). In short,

his kidneys are not functional. In order to stay alive, he is required to spend 9.5 hours every night connected to a dialysis machine.

11. In September 2013, before he began dialysis, Mr. Hayes first learned that his kidney function was rapidly deteriorating. At that time, he was working for Defendant as a nighttime shift manager. Unfortunately, that position's irregular schedule and long, unpredictable hours complicated his efforts to properly manage his illness. Thus, on September 4, 2013, he applied for intermittent FMLA leave.

12. Unfortunately, intermittent leave proved insufficient. In order to better manage his illness, on December 11, 2013, Mr. Hayes sought a transfer to an open Customer Service Recruitment Coordinator position, which had a schedule that was more conducive to maintaining his health. Despite recommendations from two different supervisors, Defendant denied his request.

13. Because Defendant denied his request for transfer, on December 15, 2013, Mr. Hayes reluctantly resigned his nighttime shift manager position for health reasons. In January 2014, he returned to a Certified Station Trainer position that he had held previously.

14. The Certified Station Trainer ("CST") position that Mr. Hayes returned to was consistent with his medical needs. In that position, he was responsible for training ramp employees how to perform their jobs. Because the job was supervisory, it did not require him to perform any strenuous physical tasks and did not require him to lift baggage. Nor did Defendant's job description for the CST position list any physical requirements. (Exhibit 4).

15. In June 2014, Mr. Hayes began experiencing nausea, loss of appetite, a sour taste in his mouth, severe headaches, fatigue, constant itching, and elevated creatinine levels. These symptoms were evidence that his kidney function was further declining and that he needed to begin dialysis immediately. He told Defendant about this change in his health and began medical leave on June 17.

16. On July 2, Mr. Hayes had surgery to repair a hernia and insert a dialysis catheter. (Exhibit 3).

17. On July 30, while Mr. Hayes was still on FMLA leave, he and his wife were at the DaVita Dialysis Center in Parker for treatment. During his visit, he was informed by the center's staff that Defendant cancelled his health insurance. He was still an employee of Defendant at the time.

18. On August 11, 2014, Mr. Hayes' physician cleared him to return to work with a 30 pound lifting restriction. (Exhibit 5). The next day, Mr. Hayes submitted to SkyWest an accommodation request consistent with his doctor's lifting restrictions. The request was signed and approved by Employee Development Manager Kiana Jodell, on August 13. (Exhibit 6).

19. On August 20, in a conference call with Mr. Hayes, Defendant's Leave of Absence Administrator Andreas Roberts told him that Defendant would no longer honor the accommodation that it had agreed to only one week prior. Although his FMLA paperwork, previous performance review, and accommodation request all described Mr. Hayes as a CST and although Defendant had a written description for the position, Ms. Roberts claimed that there was no such position, and that, in fact, Mr. Hayes was a "ramp agent."

20. Based on this patently false claim that Mr. Hayes was not a CST, Ms. Roberts told him that he would have to meet the physical requirement of the ramp agent position, which required employees to regularly lift baggage weighing up to 60 pounds.  Ms. Roberts made this claim despite the fact that, since returning to the position in January 2014, Mr. Hayes had not once needed to lift any heavy baggage.

21. Mr. Hayes explained these facts to Ms. Roberts, who nevertheless reiterated her position that Defendant would no longer honor its agreed upon accommodations. Mr. Hayes further explained that, absent a kidney transplant, he would never be cleared by his doctor to lift 60 pounds.

22. Mr. Hayes then informed Ms. Roberts that he would like a transfer to a different position.  He informed her that he had applied for an open pilot recruiter position and would appreciate assistance in being reassigned.  Two other managers, Kiana Jodell and Joshua Vallejo, who were also on the call, both stated that they had open positions in the training department and could accommodate Mr. Hayes.  Ms. Roberts responded that Mr. Hayes would not be reassigned and effectively terminated his employment by saying that he could not return to work unless his restrictions were lifted.

23. On August 22, 2014, Mr. Hayes emailed Defendant's Vice President of Human Resources to explain the situation, request reassignment, and complain that he was being discriminated against because of his medical condition.  Ms. Hunt did not respond other than to promise that a subordinate would be in touch within one week.

24. A week passed and Mr. Hayes received no response.  So on September 2, he again emailed Ms. Hunt requesting a response and reassignment.  Two days later he finally received an email from human resources employee Stephanie Ambs in which she reiterated Ms. Roberts' claim that he could only return to work if he had no restrictions.  She did not address his request for reassignment or his discrimination complaint.

25. After SkyWest effectively terminated his employment, Mr. Hayes applied for 6 different positions with SkyWest. (Exhibit 7).  Despite his excellent work record and repeated requests for reassignment, SkyWest did not place him in any one of these open positions.

26. Thus, despite his 8 years of excellent service, Defendant never allowed Mr. Hayes to return to work, even though his doctor had cleared him to.

**FIRST CAUSE OF ACTION:**
**DISABILITY DISCRIMINATION**
**THE AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. §§ 12101, *et seq.***
**THE REHABILITATION ACT**
**29 U.S.C. §§ 791 and 794**

27. As a person with kidney disease, Plaintiff has a disability as defined by law.

28. As demonstrated by his outstanding performance, Plaintiff was qualified for his position.

29. Plaintiff required reasonable accommodation in the form of medical leave, reinstatement, and reassignment.

30. Defendant could accommodate Plaintiff's requested accommodations without undue hardship.

31. Defendant discriminated against Plaintiff by failing to accommodate him, terminating his employment, failing to reinstate him, and failing to reassign him.

32. Defendant failed to engage in the interactive process by terminating Plaintiff without discussion of possible accommodation.

33. Defendant retaliated against Plaintiff by failing to reinstate or reassign him.

34. Defendant's actions were in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*.

35. Mr. Hayes has been injured as a result of Defendant's actions or lack thereof.

## SECOND CAUSE OF ACTION: FAMILY AND MEDICAL LEAVE THE FAMILY AND MEDICAL LEAVE ACT 29 U.S.C. §§ 2601-2654; 29 U.S.C. § 2612(a)(1)

36. Mr. Hayes suffered from a serious health condition, and was a qualifying employee under the Family and Medial Leave Act.

37. Mr. Hayes availed himself of a protected right under the FMLA by requesting medical leave.

38. In retaliation to Mr. Hayes' request for medical leave, Mr. Hayes suffered adverse employment actions.

39. There was a causal connection between Mr. Hayes' exercise of his rights under the FMLA and Defendant's adverse actions.

40. Mr. Hayes has been injured as a result of Defendant's actions or lack thereof.

**DEMAND FOR JUDGMENT**

Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant and award him all relief as allowed by law, including, but not limited to, the following:

a. Actual economic damages as established at trial;

b. Compensatory damages including, but not limited to, those for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

c. Punitive damages;

d. Pre-judgment and post-judgment interest at the statutory rate;

e. Attorneys' fees, costs and expenses; and

f. Such further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 14th day of September, 2015.

s/ Paul Maxon
Paul Maxon (Atty. Reg. # 37251)
The Law Office of Paul Maxon, P.C.
4450 Arapahoe Avenue
Boulder, CO 80303
Telephone: (303) 473-9999
Fax: (303) 415-2500
E-mail: paulmaxon@maxonlaw.com
Attorney for Plaintiff John Hayes