**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Action No. 15-cv-02015-REB-NYW

JOHN HAYES,

     Plaintiff,

v.

SKYWEST AIRLINES, INC.,

     Defendant.

---

## ORDER RE:  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

**Blackburn, J.**

     The matter before me is **Defendant's Motion for and Memorandum in Support of Summary Judgment** [#48],[1] filed September 29, 2016.  I grant the motion in part and deny it in part as set forth herein.

## I.  JURISDICTION

     I have jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question).

## II.  STANDARD OF REVIEW

     Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  **FED. R. CIV. P.** 56(a); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party.

---

[1] "[#48]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Farthing*, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine factual dispute.  *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994), *cert. denied*, 115 S.Ct. 1315 (1995).  Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper.  *Concrete Works*, 36 F.3d at 1518.  All the evidence must be viewed in the light most favorable to the party opposing the motion.  *Simms v. Oklahoma ex rel. Department of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S.Ct. 53 (1999).

## III.  ANALYSIS

Defendant Skywest Airlines, Inc. ("Skywest") formerly was contracted with United Airlines to provide below-wing ground services at Denver International Airport.  Plaintiff was hired by SkyWest as a Ramp Agent in 2006.  Ramp Agents primarily are responsible for moving luggage and other items on and off aircraft.  In January 2007, plaintiff was reassigned to a position as a Certified Station Trainer ("CST"), providing both classroom and on-the-job training to Ramp Agents.  He was promoted again in early 2009 to the position of Ramp Supervisor, but continued to both conduct training

and load and unload aircraft.  Finally, in June 2013, plaintiff was promoted to Shift Manager, where he oversaw below-wing operations in addition to continuing the training and other duties of his previous position.  (**Def. Motion App.**, Exh. A at 4-13 of 67.)

Shortly after this last promotion, plaintiff, who has had polycystic kidney disease since 1995, suffered a deterioration in his condition.  Beginning in September 2013, he requested, and was granted, twelve weeks of intermittent FMLA leave for the ensuing year.  (**Def. Reply App.**, Exh. G ¶¶ 4-6 at 1-2.)  On December 11, 2013, plaintiff notified Skywest that, for health reasons, he would resign his position as Shift Manager effective December 28 and seek a different position within the company.  (**Def. Motion App.**, Exh. A at 40 of 67.)  Although plaintiff requested leave from December 31, 2013, to January 28, 2014, for surgery, for reasons not apparent from the record, his surgery was delayed, and he was released to work with no restrictions on January 9, 2014.  (***Id.***, Exh. A at 43-47 of 67.)

Plaintiff returned to work on January 10.  The nature of plaintiff's job title and duties on his return is a point of significant – and not inconsequential – dispute between the parties.  Skywest's records indicate plaintiff was demoted to the position of Ramp Agent.  (***See* Def. Motion App.**, Exh. A at 41 of 67; **Def. Reply App.**, Exh. H ¶ 4 at 1-2 (showing plaintiff's job code as that for Ramp Agent).)  By contrast, plaintiff insists he returned to work as a CST with the Training Department, an option he discussed with his supervisor, Mr. Albus, prior to his return.  He testified that on his return, he was placed back on the Training Department schedule, where he reported to managers in that department and immediately began conducting training for new hires.  (***See* Plf.**

**Resp. App.**, Exh. 7 at 36-38; *see also* **Def. Motion App.**, Exh. A at 48 of 67 (under section intended to be completed by employer, stating plaintiff's essential job functions as "[t]raining new employees . . . ".)  Skywest counters that the CST position is simply an additional qualification of some Ramp Agents, not a distinct position.  The evidence submitted by the parties on the matter is inconclusive at best.  Nevertheless, nothing in the record suggests plaintiff was *not* performing the duties of a CST during this time period.[2]

Regardless, by June 2014, plaintiff's condition further deteriorated to the point that he was considered to have end-stage renal disease.  He requested and was granted FMLA leave from June 17 through at least June 25.[3]  (**Def. Motion App.**, Exh. A at 48-52 of 67.)[4]  While the parties agree this period of leave qualified as FMLA leave, they dispute the proper designation of plaintiff's continuing medical leave thereafter.  SkyWest avers plaintiff exhausted his FMLA leave for the year on June 25, and thereafter was on unpaid medical leave.  Plaintiff counters that he was on FMLA leave throughout the period from June 17 until August 11, 2014, when he was cleared to return to work.

---

[2]  The affidavit of SkyWest's Employee Relations Manager states only that there were no such positions in Denver from July to December 2014.  (**Def. Motion App.**. Exh. C ¶ 4 at 1.)  Therefore, SkyWest's citation to this evidence to suggest "there were no CST positions at DIA" when plaintiff returned to work in January 2014 is seriously misleading.  (*See* **Def. Motion** ¶ 15 at 3.)

[3]  On July 2, plaintiff underwent surgery to repair a hernia and insert a dialysis catheter.  Thereafter, he required regular dialysis, awaiting a kidney transplant.  (**Def. Motion App.**, Exh. A at 49 of 67.)

[4]  The Certification of Health Care Provider for Employee's Serious Health Condition which plaintiff submitted for his doctor to complete and sign in support of his request for FMLA leave listed his job title as "Certified Station Trainer" and noted that he would require four weeks of light duty and be subject to lifting and bending restrictions when he eventually returned to work following surgery.  (**Def. Motion App.**, Exh. A at 48-49 of 67.)

4

Although plaintiff was cleared to return to work on August 11, his doctor imposed a lifting restriction of no more than thirty pounds.  Because the Ramp Agent position ostensibly requires the ability to lift up to sixty pounds, plaintiff requested an accommodation to classroom training and office support within the Training Department, with adjusted hours to accommodate his dialysis treatments.  (**Plf. Resp. App.**, Exh. 10 at 6-8 of 52.)  Following an interactive process, SkyWest's employee development manager, Kiana Jodell, approved plaintiff's request, and he returned to work on August 12 with those accommodations.  (*Id.*, Exh. 10 at 8 of 52; Exh. 11 at 24-25 of 52; ***see also id.***, Exh. 7 at 28 of 62.)

Once again, the parties dispute the nature of plaintiff's job title when he returned to work in August 2014.  Plaintiff insists he returned to work as a CST, and the evidence suggests that not only was such the nature of the position he had been offered by Ms. Jodell, but also that plaintiff actually performed in that capacity in the initial days after he returned to work.[5]  The "Employee Accommodation" form which plaintiff and Ms. Jodell executed on August 12 following the interactive process notes that while plaintiff's

_____

[5]  In its brief, SkyWest argues that in August 2014, there were no more CST positions in Denver because United Airlines had cancelled its contract with SkyWest to provide below-wing ground services at DIA, eliminating the need for both Ramp Agents and trainers.  (*See* **Def. Motion** ¶ 20 at 3.)  The evidence does not support the implication SkyWest apparently wants the court to draw, however.  At best, the evidence is vague as to whether plaintiff – or indeed, anyone involved in assigning him to an appropriate position following his return from surgery – knew of the elimination of these jobs prior to the official notification given on September 17, 2014.  (*See* **Def. Motion App.**, Exh. A at 64-67 of 67; *see also id*, Exh. E at 4-5 of 18 (testimony of Pennie Hancock that she first learned of cancellation of United contract "towards the end of August, the beginning of September").)  More importantly, there is nothing in the record to indicate plaintiff ever was told the reason he could not continue to work as a CST after August 20, 2014, was because the position was being eliminated entirely.  (*See, e.g.*, *id.*, Exh. A at 62 of 67 (email string initiated by plaintiff stating, "Andrea stated that since I'm listed as a Ramp Agent, I am required to meet the lifting requirements, and that the corporate office does not recognize a Certified Station Trainer as an independent position;" internal response from Ms. Hancock confirming plaintiff could not be designated as a Ramp Agent only due to lifting restriction, not elimination of these positions).)

current position was "Ramp Agent/CST," as a result of discussions with plaintiff's manager and the Workers' Comp and Leave Administration Department, SkyWest was "providing . . . the following accommodation(s): **CST Job Responsibilities**." (*Id.*, Exh. 10 at 8 of 52 (emphasis in original).)  Ms. Jodell later confirmed to Lead Leave Administrator Andrea Roberts that plaintiff was only performing training responsibilities, not Ramp Agent duties, when he returned to work.

On August 15, Ms. Roberts sent Ms. Jodell the following email:

> I wanted to follow up after our conversation and going through the interactive process with his 301b lifting restriction.  During our IAP I stated his current position is a ramp agent and you stated that he really only does BST training.  I was comfortable allowing him to return to work since he is only doing training.  Then I reviewed the request for accommodation and he requested to have his duties **shifted** to classroom training and office. After speaking with Casey[6] he informed me that we need to either [change his] job code to match the position or have him go back on leave since this restriction is eliminating an essential function as a ramp agent.  I apologize for the confusion this has caused and would like to talk about this before we circle back with John.

(*Id.*, Exh. 16 at 25 of 41 (emphasis in original).)  Pennie Hancock, who was included in the distribution chain for this email, followed up to confirm that "any agent whose job code is ramp agent must be willing and able to fulfill all the essential functions of the ramp position.  It's not enough to say he or she mostly performs other duties." (*Id.*, Exh. 16 at 24 of 41.)  Ms. Jodell then responded: "So if I am understanding correctly, I will need to rescind John's ADA form?  And given the situation with this afternoon, we might lean more towards another leave?" (*Id.*)  Ms. Roberts replied:

---

[6] Casey Madsen was Ms. Roberts's director.  (*See* **Plf. Resp. App.**, Exh. 11 at 21-22 of 52.)

> I'm not sure what the situation is with John right now but I
> think we should call him Monday (Kiana & I) and review the
> accommodation with him.  At that time we will let him come
> to the conclusion or agree that a leave is best for him.  This
> way he won't feel like we forced him on leave.

(*Id.*)[7]  When Ms. Roberts ultimately spoke with plaintiff on August 20, she asked him to think about reasonable accommodations, but did not mention that his job code might be changed (as Mr. Madsen apparently had indicated was possible) and did not explicitly suggest any accommodation other than further medical leave.  (*Id.*, Exh. 11 at 30 of 52.) That same day, plaintiff was placed on unpaid leave. (*See* **Def. Motion App.**, Exh. A at 61 of 67.)

Plaintiff began applying for other positions within the company that same day. On August 20, he submitted an application for a position as a Pilot Recruiter.  Another candidate, whom SkyWest claims was more qualified and less arrogant than plaintiff, was hired for that position.  Plaintiff was offered a position as a Pilot Recruiter in Salt Lake City, but was unwilling to relocate and thus declined that offer.  Over the next several months, he also applied for positions as a Customer Service Recruitment Coordinator, Supervisor of Customer Service Safety, Shift Manager, InFlight Recruiter, and Parts Supervisor.  He was not offered any of these positions.

Meanwhile, on August 22, plaintiff sent an email to Ms. Hancock and Lori Hunt, Vice President/People, in which he stated "[I] feel that I am being <u>discriminated</u> against due to the recent changes in my health" and confirmed his ability and willingness to continue to work in the Training Department or to transfer to another position which

---

[7]  It is not clear from the evidence before the court the nature of the "situation" to which Ms. Jodell and Ms. Roberts referred.

7

complied with his lifting restrictions.  (*Id.*, Exh. A at 62-63 of 67 (emphasis in original).)
On September 16, he filed a formal Charge of Discrimination against the company,
alleging SkyWest discriminated against him on the basis of disability.  (*Id.*, Exh. F.)

The following day, SkyWest informed its below-wing ground services employees
that United Airlines had terminated its contract with SkyWest, effective December 4,
2014, necessitating a Reduction in Force ("RIF").  Employees would be furloughed from
December 4 through the end of the year, but were informed of options to transfer or
apply for different positions within the company as well.  (*Id.*, Exh. A at 64-67 of 67.)  In
light of the RIF, SkyWest held its last training class on September 30, 2014.  (*Id.*, Exh. E
at 6 of 17.)

Because plaintiff had not found another position within the company by
December 4, he was furloughed.  Although furloughed employees did have "bumping
rights," meaning they could apply for reinstatement to Ramp Agent or other customer
service positions at other airports even if another employee currently held those jobs, so
long as the applicant had more seniority than the existing employee (***see id.***, Exh. A at
65 of 67),[8] plaintiff did not seek such a transfer.  Thus, his employment was effectively
terminated on December 31, 2015.  (*Id.*, Exh. A at 66 of 67.)  This lawsuit followed.

By this lawsuit, plaintiff brings claims of interference and retaliation under Family
Medical Leave Act of 1993, 29 U.S.C. §§ 2601-2654 (the "FMLA"), and of failure to
accommodate and retaliation under the Americans with Disabilities Act of 1990, 42

---

[8] Any bump request had to be submitted by October 17, 2014.  In addition, an employee who
exercised these rights would not be entitled to a retention bonus, moving expense reimbursement, or a
relocation incentive.  (**Def. Motion App.**, Exh. A at 65 of 67.)

U.S.C. §§ §§ 12101-12213 (the "ADA").  SkyWest now moves for summary judgment as to all these claims.  Although the court finds plaintiff's FMLA interference claim cannot withstand summary judgment, the remainder of his claims do survive.

Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter." 29 U.S.C. § 2615(a)(1).  ***See also Smith v. Diffee Ford-Lincoln-Mercury, Inc.***, 298 F.3d 955, 960 (10th Cir. 2002) ("Employees are authorized under 29 U.S.C. § 2617(a) to bring an action to recover damages for violations of § 2615.").  Plaintiff contends SkyWest interfered with his right to take FMLA leave in two ways: (1) by failing to reinstate him to his former position (or an equivalent position) once he returned from leave; and (2) by cancelling his health insurance while he was on leave.  ***See*** 29 C.F.R. §§ 825.215(a) & (d) (equivalent position must be "virtually identical" in terms of, *inter alia*, health benefits).  To prove this claim, plaintiff must demonstrate

> (1) that he [or she] was entitled to FMLA leave, (2) that some adverse action by the employer interfered with his [or her] right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights.

***Metzler v. Federal Home Loan Bank of Topeka***, 464 F.3d 1164, 1180 (10th Cir. 2006) (citation and internal quotation marks omitted; alterations in original).  Plaintiff's interference claim flounders on the second of these essential elements.

The FMLA requires an "employee be restored by the employer to the position of employment held by the employee when the [FMLA] leave commenced."  29 U.S.C. § 2614(a)(1)(A).  Once FMLA leave has been exhausted, however, an employee's

entitlement to reinstatement "depend[s] on the leave benefits accorded to him under the terms of his employment . . . rather than on the leave guaranteed under the FMLA." *Glover v. DCP Midstream GP, LLC*, 549 Fed. Appx. 713, 715 (10th Cir. June 13, 2013). *See also Dalpiaz v. Carbon County, Utah*, 760 F.3d 1126, 1132 (10th Cir. 2014) ("[A]n interference claim arises when an adverse employment decision is made . . . *while* the employee is still on FMLA leave.") (emphasis added).  In other words, "the right to reinstatement under FMLA expires when FMLA leave expires." *Degraw v. Exide Technologies*, 744 F.Supp.2d 1199, 1215-16 (D. Kan. 2010) (citing numerous cases), *aff'd*, 462 Fed. Appx. 800 (10th Cir. Feb. 10, 2012).  Plaintiff therefore must come forward with evidence suggesting he was still on FMLA leave at the time he returned to work in August 2014.

He has failed to meet that burden here.  Although plaintiff insists he had taken only slightly more than nine weeks of FMLA leave at the time he returned to work (*see* **Plf. Resp.** ¶ 16 at 11), the exhibit that supposedly supports this assertion – in addition to lacking any suggestion of its derivation – is simply incomprehensible.  (*See* **Plf. Resp. App.**, Exh. 38.)  The court is neither required nor inclined to attempt to decipher how this completely unexplained, unauthenticated chart might support plaintiff's arguments.  *See Gross v. Burggraf Construction Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995) ("Judges are not like pigs, hunting for truffles buried in briefs.") (citation and internal quotation marks omitted); *Ross v. Colorado Department of Transportation*, 2012 WL 5975086 at *7 (D. Colo. Nov. 14, 2012) (court need not "scour the record in search of evidence in support of plaintiff's claims, nor . . . make arguments on his

behalf") (internal citations omitted).  Moreover, it certainly is insufficient to rebut

defendant's evidence, which confirms the company's records indicate plaintiff had used

ten weeks of intermittent FMLA leave as of June 17, 2014, and thus his right to FMLA

leave expired roughly two weeks later, on June 25, 2014.  (**Def. Reply App.**, Exh. G ¶¶

4-6 at 1-2.)[9]  His leave thereafter was characterized, properly, as unpaid medical leave

under SkyWest's own policies.  He therefore had no right to reinstatement under the

FMLA when he returned to work in August.  **See Glover**, 549 Fed. Appx. at 715;

**Degraw**, 744 F.Supp.2d at 1215-16.  Accordingly, SkyWest is entitled to summary

judgment on this claim.

However, as to plaintiff's remaining claims – for failure to accommodate under

the ADA and for retaliation under both the FMLA and the ADA[10] – the court finds and

---

[9]  As noted above, plaintiff first requested FMLA leave in September 2013.  (**See Def. Motion App.**, Exh. A at 54 of 67.)  Because SkyWest uses a "rolling" calendar year formula to calculate an employee's FMLA leave (**Def. Reply App.**, Exh. G ¶ 4 at 1), the period for calculating the 12-week period ran from September 2013 to September 2014, *see* 29 C.F.R. § 825.200(b)(4).  Because plaintiff worked an average of 39 hours a week in the preceding year, he qualified for 468 hours of leave (12 weeks x 39 hours per week) during this period.  (**See Def. Reply App.**, Exh. G ¶ 6 at 2.)  Technically, therefore, his leave expired June 25; it is unclear why SkyWest fixed the ending date at June 30, but as that adjustment worked in plaintiff's favor, the court finds the discrepancy immaterial.

[10]  SkyWest argues that the "but for" causation standard articulated in **Texas Southwest Medical Center v. Nassar**, – U.S. –, 133 S.Ct. 2517, 2534, 186 L.Ed.2d 503 (2013), for Title VII retaliation claims should apply to plaintiff's FMLA retaliation claim, rather than the arguably more lenient "motivating factor" standard.  While the Tenth Circuit has questioned the continuing viability of a motivating factor standard in FMLA retaliation cases in light of earlier Supreme Court decisions, it as yet has had no occasion to decide the issue definitively.  *See* **Twigg v. Hawker Beechcraft Corp.**, 659 F.3d 987, 1004 (10th Cir. 2011) (citing **Gross v. FBL Financial Services**, 557 U.S. 167, 129 S.Ct. 2343, 2349–51, 174 L.Ed.2d 119 (2009)).  Nevertheless, although the court has raised similar questions as to the appropriate standard of causation for ADA retaliation claims, *see Aman v. Dillon Companies, Inc.*, 645 Fed. Appx. 719, 727 n.5 (10th Cir. April 15, 2016); *Doe v. Board of County Commissioners of Payne County, Oklahoma*, 613 Fed. Appx. 743, 747 n.3 (10th Cir June 4, 2015), *cert. denied*, 136 S.Ct. 878 (2016), it has determined that *Nassar* does not alter a plaintiff's burden to prove causation in that context.  Accordingly, a plaintiff may establish causation in an ADA retaliation claim showing close temporal proximity between a claim of discrimination and the adverse action of which he complains.  *Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1190-91 (10th Cir. 2016) (citing *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014)).  The court perceives no reason why the Tenth Circuit would decline to follow the same logic in the context of FMLA retaliation claims.

concludes that genuine disputes of material fact remain which make summary judgment as to these claims improper.  The remainder SkyWest's motion therefore must be denied.

   **THEREFORE, IT IS ORDERED** as follows:

   1. That **Defendant's Motion for and Memorandum in Support of Summary Judgment** [#48], filed September 29, 2016, is granted in part and denied in part as follows:

   a.  That the motion is granted with respect to plaintiff's claim of interference under the FMLA, and that claim is dismissed with prejudice; and

   b.  That in all other respects, the motion is denied;

   2.  That at the time judgment enters, judgment with prejudice shall enter on behalf of defendant, SkyWest Airlines, Inc., and against plaintiff, John Hayes, as to plaintiff's claim for interference with his right to take FMLA leave.

---

   Applying those standards to the facts of this case, plaintiff's application for the Pilot Recruiter position in Denver was denied within the six-week window which the Tenth Circuit has found may alone establish causation.  *See Meiners v. University of Kansas*, 359 F.3d 1222, 1231 (10th Cir. 2004).  While the other positions for which he applied fall in the gray area beyond that six-week period but before the three-month mark the court has established as the outer limit of this theory of causation, there is sufficient evidence from which a reasonable jury might conclude that SkyWest's failure to hire plaintiff for these positions was retaliatory.  *See id.* (close temporal proximity requirement "should not be read too restrictively" where pattern of prior retaliatory conduct began soon after protected activity but only culminated in adverse action later).

Dated May 19, 2017, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge