**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 15-cv-02015-REB-NYW

JOHN HAYES,

    Plaintiff,

v.

SKYWEST AIRLINES, INC.,

    Defendant.

---

**ORDER RE: PLAINTIFF JOHN HAYES'
MOTION FOR ADDITIONAL MONETARY AWARDS**

---

**Blackburn, J.**

The matter before me is **Plaintiff John Hayes' Motion for Additional Monetary Awards** [#196],[1] filed January 31, 2018. Plaintiff's claims for retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654, and for discrimination and retaliation under the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ §§ 12101-12213, were tried to a jury on September 18-22, 2017. On September 25, the jury returned a verdict in favor of plaintiff on all claims and awarded plaintiff, on his FMLA claim, $150,000 in compensatory damages, and on his ADA claims, $150,000 in backpay, $150,000 in compensatory damages, and $2,000,000 in punitive damages. Plaintiff now seeks attorney fees, costs, liquidated damages under the FMLA, front pay, and prejudgment interest. I grant his motion in part and deny it in part, as more fully expatiated below.

---

[1] "[#196]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

## I. ATTORNEY FEES

The generally applicable "American Rule" provides that "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975); *see also Federal Trade Commission v. Kuykendall*, 466 F.3d 1149, 1152 (10th Cir. 2006). Nevertheless, under the ADA, a prevailing party (other than the United States), *see* 42 U.S.C. § 12205, "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust," *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1232 (10th Cir. 1997) (citation and internal quotation marks omitted). Under the FMLA, such an award is nondiscretionary, 29 U.S.C. § 2617(a)(3); *Jordan v. United States Postal Service*, 379 F.3d 1196, 1277 (10th Cir. 2004), although the amount of attorney fees awarded remains within the court's discretion, *DeFreitas v. Horizon Inv. & Management Corp.*, 2010 WL 2901616, at *2 (D. Utah July 22, 2010).

A "prevailing party" is one who "succeed[s] on any significant issue in litigation which achieves some of the benefits the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). The jury returned verdicts in plaintiff's favor on every claim submitted to it.[2] It also rejected every

---

[2] I reject defendant's feckless suggestion that any award of attorney fees should be reduced because the court granted summary judgment on plaintiff's FMLA interference claim. The facts that supported that claim are inextricably intertwined with those supporting plaintiff's other theories, such that it would be not only inappropriate but impossible to segregate out fees attributable to that claim alone. *Robinson v. City of Edmond*, 160 F.3d 1275, 1283 (10th Cir. 1998) ("[W]hen a plaintiff achieves the principal goal of her lawsuit, lack of success on some of her interrelated claims may not be used as a basis for reducing the plaintiff's fee award. When a plaintiff achieves most or all of what she aimed for in a civil rights lawsuit, her lawyer should receive a fully compensatory fee.") (citation and internal quotation marks omitted).

affirmative and other defense advanced by defendant. Plainly, plaintiff is the prevailing party in this litigation. He therefore is entitled to recover a reasonable attorney fee.

Plaintiff seeks attorney fees of $348,085.00 representing a total of 923.2 hours for work done by three attorneys – Paul Maxon, Sarah Parady, and Amy Trenary – and one paralegal – Carol Zumwalt. Initially, it appears to me that the total fees requested are eminently reasonable for a highly contested case which took three full years to bring to trial and which defendant fought vigorously and with no apparent ability to objectively perceive the relative merits of its own case. If the purpose of an award of attorney fees is to do "rough justice," **Fox v. Vice**, 563 U.S. 826, 838, 131 S.Ct. 2205, 2216, 180 L.Ed.2d 45 (2011), an award of attorney fees representing roughly 15 per cent of the total amount of damages awarded to a highly deserving plaintiff in a case such as this strikes this court as eminently just.

Analysis of the particulars of the request bear out this visceral reaction. The starting point for any calculation of a reasonable attorney fee is the "lodestar," that is, the number of hours reasonably expended multiplied by a reasonable hourly rate. **Hensley v. Eckerhart**, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); **Malloy v. Monahan**, 73 F.3d 1012, 1017-18 (10th Cir. 1996). The hourly billing rates requested by plaintiff – $450 for Mr. Maxon, $400 for Ms. Parady, $150 for Ms. Trenary, and $150 for Ms. Zumwalt – are entirely reasonable, as shown by the detailed and cogent affidavits of the prominent local civil rights attorneys whose affidavits have been offered in support of the motion. (**See Motion App.**, Exhs. 3, 4, & 6.) Although defendant suggests I should rely on the Colorado Bar Association's 2017 Economic Survey, I am not persuaded that this amalgamation of the hourly rates of attorneys

across all levels of experience and all areas of practice is an appropriate benchmark for this case. (*See* **Plf. Reply App.**, Exh. 3 ¶¶ 3-7 at 2-3.)[3] *See Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983) (attorneys experienced in civil rights and analogous litigation may merit a higher hourly rate than those operating outside their field of expertise).[4]

I also find appropriate plaintiff's election to bill the hours worked by Ms. Trenary, who is an attorney, at paralegal rates to reflect her relative lack of experience, the type of tasks she performed, and the fact that her time was block billed. This concession is a reasonable way to approximate the value of Ms. Trenary's work on this matter. Although defendant maintains all block billed entries should be disallowed, there is no inflexible rule requiring a reduction in hours for time which has been block billed, and the decision whether block billing indicates an unreasonable claim remains within this court's sound discretion. *Flying J Inc. v. Comdata Network, Inc.*, 322 Fed. Appx. 610, 617 (10th Cir.

---

[3] Defendant's attempt to analogize this case to *Ebonie S. v. Pueblo School District 60*, 2016 WL 1110442 (D. Colo. March 22, 2016), is unconvincing. The court there considered a request for more than $1.1 million in attorneys fees for services charged by more than 15 attorneys who were not experienced in civil rights litigation (and as far as the court's opinion reflects, did not submit affidavits in support of their regular hourly rates, either). *See id.* 2016 WL 1110442 at *2. I would note also that the rates of the top two highest billing attorneys were reduced to levels commensurate with what Mr. Maxon and Ms. Parady request here.

Concomitantly, defendant's request for judicial notice of the filings in *Ebonie S.* and the Economic Survey is moot, and is denied on that basis. (*See* **Defendant Skywest Airlines, Inc.'s Request for Judicial Notice in Support of its Response in Opposition to Plaintiff's Motion for Additional Monetary Awards** [#205], filed March 14, 2018.)

[4] In recognizing counsel's expertise in this area, and the concomitant propriety of the requested hourly rates, I in no way mean to condone his attempt to bolster his request by bringing the court's attention to the fact that this case was awarded the Colorado Trial Lawyers Association's 2017 Case of the Year Award. (*See* **Notice Re: Motion for Additional Monetary Awards** [#214], filed May 15, 2018.) The court has not the slightest inkling what criteria were used to make that determination, much less that they had anything to do with the skill or capabilities of Mr. Maxon. Suffice to say, having presided over this trial, it appears clear to me that plaintiff achieved a high degree of success based on the ultimate righteousness of his claims, not the skill *vel non* of Mr. Maxon.

April 20, 2009). Because the block billed tasks defendant cites as problematic reflect the type of activities a diligent paralegal typically would perform in preparing a case for trial, I find it reasonable to allow recovery for this time at paralegal rates.[5]

Moreover, I find the number of hours for which plaintiff seeks compensation in this matter is reasonable. While Mr. Maxon billed significantly more hours than the other two attorneys combined, this circumstance does not demonstrate a lack of billing judgment in this particular instance.[6] Mr. Maxon labored on this matter alone for nearly two years and eight months before engaging the services of another attorney or a paralegal to assist him, and then only after it appeared likely the case would go to trial. This decision does not represent inappropriate "top-heavy" billing, as defendant suggests, but simply the realities of legal practice outside the parameters of a large law firm. Until the court denied defendant's motion for summary judgment, there was no obvious reason to engage another attorney to handle matters which, in a multi-lawyer firm, might have been delegated to an associate or junior partner.[7] ***See Anchondo v.***

---

[5] Defendant does not challenge plaintiff's request to recover the value of services performed by the paralegal, Ms. Zumwalt, **cf. United States Welding, Inc. v. TECSYS, Inc.**, 2017 WL 4334009 at *3-4 (D. Colo. Sept. 8, 2017), nor the requested paralegal rate of $150 per hour, which I find to be entirely reasonable and in line with prevailing rates in the Denver legal market, **see id.** (approving requested fees for paralegals which, based on restricted documents to which this court is privy, substantially exceed the requested hourly rate in this case). **See also Casaretto v. GEICO Casualty Co.**, 2017 WL 7726716 at *2 (D. Colo. Aug. 15, 2017) ($125/hour); **Eighth District Electrical Pension Fund v. Campbell Electric, Inc.**, 2017 WL 1243059 at *3 (D. Colo. March 17, 2017) ($100/hour).

[6] In determining the reasonable number of hours spent on the litigation, an applicant must exercise the same "billing judgment" as would be proper in setting fees for a paying client. **Hensley**, 103 S.Ct. at 1941; **Malloy**, 73 F.3d at 1018. "Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." **Hensley**, 103 S.Ct. at 1940 (citation and internal quotation marks omitted; emphases in original). Counsel therefore must make a good faith effort to exclude hours that are "excessive, redundant or otherwise unnecessary." *Id.* at 1939-40.

[7] I am particularly non-plussed by defendant's complaints as to the number of hours Mr. Maxon devoted to preparing plaintiff's response to its motion for summary judgment, which addressed every issue in the case and ran to 34 pages, plus 40 exhibits totaling more than 230 pages.

***Anderson, Crenshaw & Associates, L.L.C.***, 616 F.3d 1098, 1104 (10th Cir. 2010) (noting no "authority holding that an experienced attorney must work for free whenever the task at hand might not call for the full measure of his expertise"). Mr. Maxon's experience in disability law, and his intimate familiarity with this case in particular, gleaned from his intense involvement in the details of this case throughout the litigation, undoubtedly led to efficiencies that might not have been realized otherwise.

Moreover, to the extent the number of hours counsel expended in bringing this matter to resolution might seem excessive, the fault for such excess lies squarely on defendant's shoulders. Defendant pursued this matter aggressively and with an apparent lack of self-awareness that was evident throughout the entirety of the litigation. Even after the court denied the majority of defendant's motion for summary judgment,[8] it rejected offers to mediate and an offer of settlement which seems almost laughably *de minimis* in hindsight. Having presided over this case through trial, it is plain to me that defendant's obstinacy and myopia in this matter were the primary contributors to the time required to bring it to resolution. Under those circumstances, I decline defendant's invitation to serve as a "green-eyeshade accountant," scouring individual billing entries for evidence of waste or fat. ***Fox***, 131 S.Ct. at 2216.

Accordingly, I find and conclude plaintiff is entitled to recover attorney fees in the amount of $348,085.00, plus a reasonable attorney fee for hours attributable to preparation for and participation in the hearing to determine an appropriate award of

---

[8] Contrary to my typical practice, my order denying defendant's motion included a lengthy recitation of the facts as seen in the light most favorable to plaintiff. In so doing, it was my hope – and a more perceptive and less obdurate party might have perceived as much – that defendant might have realized the relative precariousness of its position. Although defendant obviously was within its rights to insist on proceeding to trial, it must accept the consequences of that decision.

front pay.

## II. FRONT PAY[9]

Under both the FMLA and the ADA, the decision whether to award front pay is an equitable one committed to the sound discretion of the court. ***See Bartee v. Michelin North America, Inc.***, 374 F.3d 906, 910 (10th Cir. 2004) (ADA); ***Godinet v. Management & Training Corp.***, 56 Fed. Appx. 865, 872 (10th Cir. Jan. 7, 2003) (FMLA).[10] I find such an award appropriate here, and will set a date for a hearing to determine the amount of such an award.

I reject defendant's suggestion that plaintiff is not entitled to front pay because he would have been furloughed when the Certified Station Trainer position was eliminated at Denver International Airport shortly after he returned from medical leave. ***See Sandlin v. Corporate Interiors, Inc.***, 972 F.2d 1212, 1215 (10th Cir. 1992) ("[F]ront pay is inappropriate if a defendant company has ceased doing business."); ***Dalal v. Alliant Techsystems, Inc.***, 927 F.Supp. 1374, 1378 (D. Colo. 1996) ("[A]ny award of front pay is limited by the estimated remaining tenure plaintiff would have enjoyed with his company absent the discriminatory conduct."), ***aff'd***, 182 F.3d 137 (10th Cir. 1999). Even were I to accept this argument, plaintiff would still be entitled to front pay from the

---

[9] After the parties submitted competing backpay instructions, I found defendant had waived or forfeited its right to have that issue determined by the court (***see*** Tr. 787) and submitted the question to the jury (***see* Jury Verdict** ¶ 5 at 3). ***See RSACO, LLC v. Resource Support Associates, Inc.***, 208 Fed. Appx. 632, 642-43 (10th Cir. Dec. 12, 2006). I again decline defendant's suggestion that the determination of backpay should be made by the court, which is procedurally deficient in any event. ***See* D.C.COLO.LCivR** 7.1(d).

[10] In its response, defendant moves for discovery on this issue. Procedurally, this motion is improper, and I would deny it on that basis alone. ***See* D.C.COLO.LCivR** 7.1(d). Even if I were to consider the motion substantively, however, it is baseless. Defendant plainly could have anticipated front pay would be an issue were plaintiff to prevail on any one of his claims in this lawsuit. Its failure to take adequate discovery on that issue prior to the discovery deadline is unexplained and inexcusable.

7

time he returned to work in August until the time of the furlough in December. *See id.* ("[A]ny award of front pay is limited by the estimated remaining tenure plaintiff would have enjoyed with his company absent the discriminatory conduct.").

Beyond that, however, defendant's own representative testified at trial that plaintiff could have exercised his "bumping" rights to take another position within the organization. In addition, plaintiff's former supervisor stated unequivocally he "absolutely" would have hired plaintiff for a position with Simplicity, the company that took over operations from defendant at DIA, had he known defendant was available. *See also Marsh v. Coleman Co.*, 806 F.Supp. 1505, 1508 (D. Kan. 1992) (even though evidence was uncertain regarding whether plaintiff would have transferred to defendant's successor company, "defendant should bear the risk of the uncertainty which [its] own wrong has created") (quoting *Furr v. AT & T Technologies, Inc.*, 824 F.2d 1537, 1548 (10th Cir. 1987)) (internal quotation marks omitted). Likewise, the evidence at trial demonstrated there were other positions within the company for which plaintiff ostensibly was qualified but was not selected.[11] The jury rejected defendant's suggestion that it had legitimate, non-discriminatory reasons for these employment decisions, and the evidence is more than sufficient to support that finding.

For these reasons, plaintiff is entitled to an award of front pay. I will set an

---

[11] I reject defendant's argument that plaintiff's only claim based on his failure to be placed in these positions is limited to his failure to accommodate. The Final Pretrial Order does not admit of such a crabbed and hypertechnical reading, and the instructions submitted to the jury – to which defendant either advanced no objection (*see* Tr. 771, 782) or actively joined in plaintiff's request that these employment actions be specified in the instruction (*see* Tr. 772-773) – plainly stated plaintiff's position that the failure to reassign or promote him was discriminatory and/or retaliatory. (**Jury Instructions** No. 2 at 1, No. 10 at 1, No. 19 at 1.) Moreover, defendant clearly believed plaintiff had asserted such claims because it repeatedly sought judgment on them. (*See* **Skywest Airlines, Inc.'s Motion To Dismiss for Lack of Subject Matter Jurisdiction** [#118], filed September 1, 2017; **Defendant's Motion To Clarify** ¶¶ 8-10 at 2 [#74], filed July 25, 2017; **Motion for Summary Judgment** at 13-15 [#48], filed September 26, 2016.)

8

evidentiary hearing to determine an appropriate amount of such an award.

### III.  LIQUIDATED DAMAGES

Under the FMLA, plaintiff is entitled to an award of liquidated damages equal to double the amount of compensatory damages awarded, plus prejudgment interest thereon, **Smith v. Diffee Ford-Lincoln-Mercury, Inc.**, 298 F.3d 955, 964 (10th Cir. 2002), unless defendant proves its violation of the statute was in good faith and that it had reasonable grounds for believing its actions did not violate the FMLA, *see* 29 U.S.C. § 2617(a)(1)(A)(iii); **Saavedra v. Lowe's Home Centers, Inc**., 748 F.Supp.2d 1273, 1298 (D.N.M. 2010).[12]

Defendant contends plaintiff waived his right to seek liquidated damages by failing to preserve the issue in the Final Pretrial Order. I disagree. Because liquidated damages under the FMLA are essentially automatic *unless* the employer proves its good faith, the fact that defendant raised the defense of good faith (*see* **Final Pretrial Order** ¶ 3.d(3) at 5) and argued the issue to the jury demonstrates that entitlement to liquidated damages was an issue contemplated by the parties, fairly embraced within the scope of the Final Pretrial Order, and actually tried to the jury. **See Cadorna v. City and County of Denver**, 2006 WL 3951874 at *1 (D. Colo. Nov. 27, 2006). There was no waiver here.

The only question remaining, therefore, is whether defendant has shown it in fact acted in good faith and with a reasonable belief that its actions did not violate the FMLA.

---

[12] Under the guise of arguing that liquidated damages are inappropriate, defendant claims the entire FMLA claim is unsound because there was no adverse employment action nor sufficient evidence of causation. (*See* **Def. Resp.** at 10-16.) Essentially, this is a motion for reconsideration, which is not only procedurally improper, *see* **D.C.COLO.LCivR** 7.1(d), but also substantively groundless. Having rejected these same arguments at least twice before, I will not rehash them again here.

> To establish good faith under the FMLA, a defendant must show that it honestly intended to ascertain the dictates of the FMLA and to act in conformance with it. Thus, an employer will be liable for liquidated damages where it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.

*Pagan-Colon v. Walgreens of San Patricio, Inc*., 697 F.3d 1, 14 (1st Cir. 2012) (citations and internal quotation marks omitted). The jury, instructed to determine whether defendant "honestly believed its reasons [for its employment decisions] and acted in good faith" (**Jury Instruction** No. 22 at 2), found defendant's stated reasons unworthy of credence and merely a pretext for discrimination and retaliation. To the extent I am not bound by that determination, I concur with the jury's implicit finding that defendant did not act in good faith with respect to plaintiff's rights under the FMLA.

Defendant argues it acted in good faith because it offered plaintiff unpaid medical leave after his FMLA leave expired June 30, 2014. Of course, an employer cannot *interfere* with an employee's right to take FMLA leave once the employee has exhausted that leave. **See Degraw v. Exide Technologies**, 744 F.Supp.2d 1199, 1215-16 (D. Kan. 2010) (citing numerous cases), **aff'd**, 462 Fed. Appx. 800 (10th Cir. Feb. 10, 2012). The question submitted to the jury, however, was whether defendant *retaliated* against plaintiff for taking FMLA leave. With respect to that claim, the evidence established that defendant cancelled plaintiff's health insurance when his FMLA leave expired, the same day he began dialysis treatment. Although defendant claims it had a right to do so under the terms of its insurance policy, the policy provides that insurance will be maintained until the month *following* the expiration of FMLA leave.

(*See* **Tr. Exh.** 56 § 3(F)(2)(a) at 6.)

Moreover, defendant's behavior toward plaintiff after he returned from leave further evidenced a callousness towards plaintiff's rights and a recklessness regarding its own responsibilities under the FMLA. Specifically, after allowing plaintiff to return to work in a trainer position that accommodated his post-surgery limitations (following an internal interactive process), defendant quickly retracted its decision after plaintiff had a fainting spell at work. In subsequent internal communications, employees discussed the need to convince plaintiff he should stay on medical leave. Defendant then told plaintiff his then-current job code required him to return to work as a ramp agent, a position for which his post-surgery limitations plainly disqualified him. That series of events alone smacks of bad faith, even before one considers that all that was required to effectuate the transition to the trainer job was a change in plaintiff's job code.[13] Even if that position was due to be eliminated before the end of the year, it would have allowed plaintiff to continue to work while looking for another position within the company.[14] Adding yet further insult, defendant then rejected plaintiff for every other position for which he applied, for reasons that did not bear scrutiny under cross-examination, and which I found no more convincing than did the jury.

Accordingly, I reject defendant's argument that it acted in good faith and with a reasonable belief that its actions were compliant with the FMLA. Plaintiff thus is entitled

---

[13] Despite defendant's protestations to the contrary, the evidence at trial showed that such an adjustment in fact was possible.

[14] The benefit of remaining on the job was borne out when plaintiff's former supervisor testified he "absolutely" would have hired plaintiff to work at the company that took over operations from defendant at DIA but he did not know plaintiff was available because he was not at work.

to liquidated damages under the FMLA in an amount equal to the compensatory damages awarded by the jury plus prejudgment interest thereon.

### IV. PREJUDGMENT INTEREST

Finally, plaintiff seeks prejudgment interest on the jury's award of damages for lost wages, salary, and benefits.[15] "The purpose of prejudgment interest is to compensate the wronged party for being deprived of the monetary value of his loss from the time of the loss to the payment of judgment." **Guides, Ltd. v. Yarmouth Group Property Management, Inc**., 295 F.3d 1065, 1078 (10th Cir. 2002) (citation and internal quotation marks omitted). Although the award of prejudgment interest is committed to the sound discretion of the court, *see* **EEOC v. Western Trading Co.**, 291 F.R.D. 615, 621 (D. Colo. 2013), prejudgment interest is generally awarded in federal cases, **see Zuchel v. City & County of Denver**, 997 F.2d 730, 746 (10th Cir. 1993). An award of prejudgment interest is mandatory under the FMLA. 29 U.S.C. § 2617(a)(1)(A)(ii). **See also Austin v. Jostens, Inc.**, 2009 WL 902417 at *1 (D. Kan. March 31, 2009).

Defendant, albeit begrudgingly, does not dispute that plaintiff is entitled to prejudgment interest, but challenges his request for interest calculated at the Colorado statutory rate. That request is patently baseless. **See Chiddix Excavating, Inc. v. Colorado Springs Utilities**, 2016 WL 6777829 at *8 (D. Colo. Nov. 7, 2016). Although the parties to this case happened to be diverse, diversity jurisdiction was never alleged,

---

[15] As defendant notes, prejudgment interest is not available on amounts awarded as compensatory (non-monetary) damages under the ADA, *see* **Clawson v. Mountain Coal Co.**, 2007 WL 201253 at *14 (D. Colo. Jan. 24, 2007), **aff'd**, 569 F.3d 1215 (10th Cir. 2009), **cert. denied**, 130 S.Ct. 1285 (2010), or punitive damages, **White v. Wycoff**, 2016 WL 9632932 at *2 n.2 (D. Colo. July 7, 2016), **aff'd**, 862 F.3d 1065 (10th Cir. 2017).

12

even in the alternative. The case unequivocally implicated the court's federal question jurisdiction. "[A] federal rate of interest rather than the state rate applies where jurisdiction is based on a federal question." *Guides, Ltd.*, 295 F.3d at 1077. *See also* 29 U.S.C. § 2617(a)(1)(A)(ii) (prejudgment interest under FMLA is "calculated at the prevailing rate").

"Because there is no federal statutory interest rate on prejudgment interest, the rate imposed will be left to the trial court's discretion." *Kleier Advertising, Inc. v. Premier Pontiac, Inc.*, 921 F.2d 1036, 1042 n.4 (10th Cir. 1990). Defendant argues for application of the underpayment rate set forth in 26 U.S.C. § 6621(a)(2), which is the federal short-term rate plus three percent.[16] *See EEOC v. Guardian Pools, Inc*., 828 F.2d 1507, 1512 (11th Cir. 1987); *Barnett v. Board of County Commissioners of County of Montrose*, 2015 WL 5315183 at *2 (D. Colo. Sept. 11, 21015); *EEOC v. Western Trading Co.*, 291 F.R.D. 615, 621-22 (D. Colo. 2013). As the district court discussed in *EEOC v. Western Trading Co.*, adopting this rate (as opposed to the federal post-judgment interest rate set forth in 28 U.S.C. § 1961, *see, e.g.*, *Electrology Laboratory, Inc. v. Kunze*, 169 F. Supp. 3d 1119, 1160-61 (D. Colo. 2016)), reflects what plaintiff might have recovered had he placed his money in an investment account, and thus better achieves the goal of fully compensating plaintiff for his damages. *Western Trading Co*, 291 F.R.D. at 621-22. I concur with that rationale.

Accordingly, I find and conclude that plaintiff is entitled to interest on his award of

---

[16] The federal short-term interest rate for July 2018 is 2.38%. (*See* Internal Revenue Service, **Index of Applicable Federal Rates (AFR) Rulings, RR 2018-19** (available at: https://apps.irs.gov/app/picklist/list/federalRates.html) (last accessed June 20, 2018). *See also* 26 U.S.C. § 6621(b)(3).

backpay under either the ADA or the FMLA at the rate set forth in 26 U.S.C. § 6621(a)(2).

## V.  COSTS

As the prevailing party in this litigation, plaintiff is entitled to costs. My order for judgment will so provide when it is entered. Submission of a bill of costs to the clerk of the court for determination will be governed by Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

## VI.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That **Plaintiff John Hayes' Motion for Additional Monetary Awards** [#196], filed January 31, 2018, is granted in part and denied in part, as follows:

    a. That the motion is denied with respect to plaintiff's request for prejudgment interest at the Colorado state statutory rate; and

    b. That in all other respects the motion is granted;

2. That plaintiff is awarded the following:

    a. Attorney fees in the amount $348,085.00, plus a reasonable fee for preparation for and attendance at the front pay hearing;

    b. Liquidated damages in the amount of $150,000.00 plus prejudgment interest at the rate provided by 26 U.S.C. § 2261;

    c. Front pay in an amount to be determined after hearing;

    d. Prejudgment interest on the award of lost wages, salary, and benefits at the rate set forth in 26 U.S.C. § 6621(a)(2); and

  e. Costs as provided by Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1;

3. That **Defendant Skywest Airlines, Inc.'s Motion To Strike Plaintiff's Notice Re: Motion for Additional Monetary Awards** [#217], filed May 25, 2018, is denied as moot; and

4. That a hearing to determine front pay is set for **Tuesday, September 4, 2018**, at **1:30 p.m.**, reserving the balance of the afternoon for the hearing.

Dated July 2, 2018, at Denver, Colorado.

**BY THE COURT:**

*Bob Blackburn*
Robert E. Blackburn
United States District Judge