# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Robert E. Blackburn

Civil Action No. 15-cv-02015-REB-NYW

JOHN HAYES,

    Plaintiff,

v.

SKYWEST AIRLINES, INC.,

    Defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDERS RE: FRONT PAY

**Blackburn, J.**

    This matter came before me for an evidentiary hearing on the issue of front pay on September 4-5, 2018. (*See* **Order Re: Plaintiff's John Hayes' Motion for Additional Monetary Awards** ¶ VI.4. at 15 [#220],[1] filed July 2, 2018.) The parties appeared through their respective attorneys. Plaintiff, John Hayes, appeared in person, and defendant, SkyWest Airlines, Inc. ("SkyWest"), was represented by its corporate representative, Pennie Hancock.

    Having judicially noticed all relevant adjudicative facts in the file and record of this case pro tanto, considered the evidence educed at the hearing in its various forms, determined the credibility of the witnesses, weighed the evidence, considered all reasons stated, arguments advanced, and the authorities cited by the parties in both written and oral form, and being otherwise sufficiently advised, I enter the following

---

[1] "[#220]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

findings of fact (which have been established by a preponderance of the evidence), conclusions of law, and orders.[2]

Mr. Hayes's claims against SkyWest for retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654, and for discrimination and retaliation under the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ §§ 12101-12213, were tried to a jury on September 18-22, 2017.  On September 25, 2018, the jury returned a verdict in favor of Mr. Hayes on all claims and awarded him substantial damages – both compensatory and punitive. Following the verdict, Mr. Hayes filed a motion seeking, *inter alia*, an award of front pay.  (*See* **Plaintiff John Hayes' Motion for Additional Monetary Awards** [#196], filed January 31, 2018.)  I determined Mr. Hayes was entitled to such an award.  (*See* **Order Re: Plaintiff's John Hayes' Motion for Additional Monetary Awards** ¶ II at 7-9.)

The underlying facts are well-known to the parties and need not be recited at length here.  Mr. Hayes worked for SkyWest at Denver International Airport ("DIA") from 2006 until he was terminated on December 31, 2015.  During all times relevant to this lawsuit and up to the point he was cleared to return to work on September 17, 2018, Mr. Hayes was subject to work restrictions related to polycystic kidney disease, including most particularly a lifting restriction.  At the time of his termination, Mr. Hayes was on medical leave, SkyWest having determined that the lifting restrictions disqualified Mr. Hayes from the position of Ramp Agent.

---

[2] Any finding of fact more properly deemed a conclusion of law, or any conclusion of law more properly deemed a finding of fact, shall be as more properly characterized.

Thereafter, Mr. Hayes took a number of different positions in the airline industry, first in Denver and later in Memphis, Tennessee, where his wife managed to find work after losing her job in Denver in 2016.[3]  As discussed more fully below, during the period of time relevant to the award of front pay, including presently, Mr. Hayes worked in the customer service department for United Ground Express ("UGE") in Memphis.

I begin first with a rehearsal of the apposite legal principles.  "[F]ront pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." **Pollard v. E.I. du Pont de Nemours & Co.**, 532 U.S. 843, 846, 121 S.Ct. 1946, 1948, 150 L.Ed.2d 62 (2001).  I have broad equitable discretion to grant such relief as will "achieve the broad purpose of eliminating the effects of discriminatory practices and restoring the plaintiff to the position that she would have likely enjoyed had it not been for the discrimination." **Bartee v. Michelin North America, Inc**., 374 F.3d 906, 910-11 (10th Cir. 2004) (citation and internal quotation marks omitted).

While an employee is entitled to reinstatement to the job he would have held but for the discrimination or retaliation, **see Davoll v. Webb**, 194 F.3d 1116, 1143 & n.19 (10th Cir. 1999), and "[a]lthough reinstatement is the preferred remedy and should be ordered whenever it is appropriate, it is not always a viable option:"

> This court has recognized that front pay may be appropriate
> where an employer's extreme hostility renders a productive
> and amicable working relationship impossible, or if the
> employer-employee relationship has been irreparably

---

[3]  Although there was much testimony regarding these various positions at the front pay hearing, all but Mr. Hayes's present job encompassed the period of time subsumed by the jury's backpay award.  I thus do not discuss the particulars of those jobs herein.

3

>    damaged by animosity caused by the lawsuit. Under such
>    circumstances, an award of future damages in lieu of
>    reinstatement furthers the remedial purposes of the [statute]
>    by assuring that the aggrieved party is returned as nearly as
>    possible to the economic situation he would have enjoyed
>    but for the defendant's illegal conduct.

***Abuan v. Level 3 Communications, Inc.***, 353 F.3d 1158, 1176 (10th Cir. 2003) (citations and internal quotation marks omitted). ***See also Buonanno v. AT&T Broadband, LLC***, 313 F.Supp.2d 1069, 1085 (D. Colo. 2004) ("[L]itigation, especially litigation that culminates in a trial, is often a polarizing process, driving parties further apart rather than closer together."). Hostility between the parties may make reinstatement inappropriate even where the employee has been made "an unconditional and comparable job offer" by the employer. ***Abuan***, 353 F.3d at 1178. Reinstatement also is not indicated where a plaintiff's former job no longer exists. ***See Quint v. A.E. Staley Manufacturing Co.***, 172 F.3d 1, 18 (1st Cir. 1999).

All these conditions pertain here. Even setting aside SkyWest's discriminatory and retaliatory treatment of Mr. Hayes while he was still employed by the company, its apparent scorched-earth policy in the conduct of this litigation leaves no room for the resumption of an amicable employment relationship with Mr. Hayes. The hostility between the parties during both the trial and the front pay hearing, as well as in their written submissions, has been palpable.[4] Thus, even if SkyWest had made Mr. Hayes a comparable job offer, which it has not, I find he would not have been required to accept a position with the company had one been offered to him at the time, nor would he be

---

[4] As just one particularly obscene example, SkyWest's counsel questioned whether Mr. Hayes chose to continue COBRA payments after leaving a job at United Airlines in order to increase his damages in this case.

4

required to do so now. Moreover, SkyWest has eliminated the Pilot Recruiter position it suggests is the most apt benchmark for an award of front pay. For all these reasons, I find an award of front pay in lieu of reinstatement is indicated.[5]

Determination of an appropriate award of front pay requires the court "to predict future events and consider many complicated and interlocking factors," ***Mason v. Oklahoma Turnpike Authority***, 115 F.3d 1442, 1458 (10th Cir. 1997), and any award should "reflect the individualized circumstances of the plaintiff and the employer," ***Davoll***, 194 F.3d at 1144. Factors relevant to the determination include, but are not limited to

> work life expectancy, salary and benefits at the time of termination, any potential increase in salary through regular promotions and cost of living adjustment, the reasonable availability of other work opportunities, the period within which a plaintiff may become re-employed with reasonable efforts, and methods to discount any award to net present value.

***Id.*** The court also may consider all evidence presented at trial. ***Id.*** While the court should avoid granting the plaintiff a windfall, ***Whittington v. Nordam Group Inc.***, 429 F.3d 986, 1001 (10th Cir. 2005), ultimately its discretion "should be measured against an anti-discrimination statute's purpose to make the plaintiff[] whole," ***Davoll***, 194 F.3d at 1143-44 (citation and internal quotation marks omitted).[6]

---

[5] Front pay is available as an alternative to reinstatement under both the Americans With Disabilities Act, ***see Davoll***, 194 F.3d at 1143, and the FMLA, ***see Smith v. Diffee Ford-Lincoln-Mercury, Inc.***, 298 F.3d 955, 964 (10th Cir. 2002).

[6] Because it requires the court to predict the future to some extent, an award of front pay by nature is always somewhat speculative. ***Greene v. Safeway Stores, Inc.***, 210 F.3d 1237, 1246 (10th Cir. 2000). Nevertheless, a defendant whose discriminatory or retaliatory behavior caused such uncertainty should not be heard to complain on that account. ***See Mathiason v. Aquinas Home Health Care, Inc.***, 187 F.Supp.3d 1269, 1278 (D. Kan. 2016).

To return Mr. Hayes "as nearly as possible to the economic situation he would have enjoyed but for the defendant's illegal conduct," **Abuan**, 353 F.3d at 1176, I must first determine what position Mr. Hayes would have held had he not been discriminated and retaliated against by Skywest. SkyWest insists Mr. Hayes's entitlement to front pay should be measured by the value of the Pilot Recruiter position at DIA which was among those positions the jury found SkyWest illegally denied Mr. Hayes. I disagree.

In considering backpay awards, courts have held if a plaintiff can prove that, but for his employer's discrimination, he would have been hired by a third-party at a higher wage, his award of backpay may be measured by what he would have earned in that job. **See Szeinbach v. Ohio State University**, 820 F.3d 814, 824 (6th Cir.) (citing **Nasser v. University of Texas Southwestern Medical Center**, 674 F.3d 448, 455 (5th Cir. 2012), **vacated on other grounds**, 133 S.Ct. 2517 (2013)), **cert. denied**, 137 S.Ct. 198 (2016); **Weaver v. Casa Callardo, Inc.**, 922 F.2d 1515, 1527 (11th Cir. 1991). **See also Nord v. United States Steel Corp.**, 758 F.2d 1462, 1473 (11th Cir. 1985) (where employer eventually sold off assets to third-party, victim of discrimination was "entitled to whatever employment opportunities other [employees] were given"). These courts reason that such an award, in an appropriate case, serves to make the plaintiff whole, **Szeinbach**, 820 F.3d at 823-24; **Nasser**, 674 F.3d at 455, the ultimate the purpose of backpay, **Ford Motor Co. v. EEOC**, 458 U.S. 219, 244, 102 S.Ct. 3057, 3072, 73 L.Ed.2d 721 (1982); **Estate of Pitre v. Western Electric Co.**, 975 F.2d 700, 704 (10th Cir. 1992), **cert. denied**, 113 S.Ct. 459 (1993). **See also Nasser**, 674 F.3d at 455 (noting Title VII "does not require that the employer liable for back pay be the same

6

entity for whom the plaintiff would have worked had he not suffered unlawful retaliation").[7]

Because front pay likewise is designed to make the plaintiff whole, the same logic applies equally here. Accordingly, a plaintiff who can show he would have had an employment opportunity with a third party absent his employer's discrimination should have the value of his award measured by that lost opportunity. Such is the case here. Had Mr. Hayes not been discriminated and retaliated against by SkyWest, he would have had the opportunity to apply for a job with the company that assumed the SkyWest contract to service United Airlines at DIA, Simplicity Aviation ("Simplicity"). The clear preponderance of the evidence adduced at the hearing supports the conclusion that such jobs were available and that Mr. Hayes most likely would have been offered such a position.

At the time Simplicity assumed the contract, it had approximately 400 jobs available at DIA,[8] including fourteen openings for Trainers, a position for which Mr. Hayes was qualified and which he could perform within both his former and current medical restrictions. In making this finding, I credit the testimony of Robert Hopkins, who worked for SkyWest as a Safety Supervisor prior to the loss of the DIA contract. Mr. Hopkins was hired by Simplicity as a Trainer in October 2014. At the time he was hired, Mr. Hopkins was asked by the Station Manager for Simplicity to identify other SkyWest employees Simplicity should consider hiring. Simplicity hired at least one

---

[7] The ADA expressly incorporates the remedies provided by Title VII. *See* 42 U.S.C. § 12117(a); ***Shikles v. Sprint/United Management Co.***, 426 F.3d 1304, 1309 (10th Cir. 2005).

[8] Together with its contracts with other airlines and a later-acquired fueling contract with the airport itself, Simplicity presently employs around 1,000 people at DIA.

SkyWest employee Mr. Hopkins recommended. Simplicity ultimately hired four former SkyWest employees as Trainers.[9] Former SkyWest employees at DIA were given preference in hiring with Simplicity, but not all open positions were filled in this way, and Simplicity did have to hire from outside.

As a direct and proximate result of SkyWest's discriminatory and retaliatory conduct of placing Mr. Hayes on medical leave and refusing to accommodate his serious medical condition, either by modifying his job duties or promoting him to a position consistent with his physical restrictions, Mr. Hopkins did not know Mr. Hayes was looking for work at the time Simplicity assumed the SkyWest contract. Mr. Hayes likewise was unaware that Simplicity was hiring, although not due to any lack of diligence on Mr. Hayes's part. Simplicity was not advertising positions on-line at that time, and because he was on medical leave (again, as a result of SkyWest's discrimination and retaliation), he could not have been expected to know that Simplicity was seeking candidates.[10]

Mr. Hopkins testified credibly that had known Mr. Hayes was looking for work, Mr. Hayes "definitely would have been in the conversation" about SkyWest employees who should be considered for positions with Simplicity. Based on his knowledge of Mr. Hayes's work ethic and capabilities, Mr. Hopkins testified he would have recommended

---

[9] A fifth SkyWest employee was hired as a Trainer Supervisor.

[10] Despite actively looking for work after his termination from SkyWest, Mr. Hayes did not become aware that Simplicity had assumed the SkyWest contract at DIA until he went to work for United Airlines in March 2015. Around that time Mr. Hayes went to work for United Ground Express in March 2017, and he ran into Mr. Hopkins at a training in Chicago, where the two spoke briefly. Although Mr. Hopkins told Mr. Hayes Simplicity was taking over major accounts in different locations around the country, Memphis, Tennessee, where Mr. Hayes and his wife were then living and working, was not one of those locations.

Mr. Hayes for a position. Indeed, if Mr. Hayes wanted a position with Simplicity today, Mr. Hopkins testified he would "absolutely" encourage him to apply and would write Mr. Hayes a letter of recommendation; something he said he did not do often.

The evidence adduced both at the front pay hearing and at trial bears out Mr. Hopkins's opinion that Mr. Hayes is a motivated and capable worker. Mr. Hayes has been eager and willing to work despite the extreme challenges of his medical condition and sometimes against the advice of his treating physicians.

Finally, the preponderance of the evidence more than substantiates a conclusion that Mr. Hayes would have taken a position as a Trainer with Simplicity. At the time it assumed the DIA contract, Simplicity offered Trainers $19 an hour,[11] compared to the $16.83 an hour Mr. Hayes might have earned as a Pilot Recruiter for SkyWest. I thus find and conclude, by at least a preponderance of the evidence, that Mr. Hayes would have been hired as a Trainer by Simplicity in January 2015.

Because Mr. Hayes did not secure a position with Simplicity as a result of SkyWest's illegal discrimination and retaliation, he was forced to look for other work. The question thus arises whether he appropriately mitigated his damages. **See Dilley v. SuperValu, Inc.**, 296 F.3d 958, 967 (10th Cir. 2002).[12] The only question for me is

---

[11] Mr. Hopkins testified salaries for all positions at Simplicity were increased another dollar early in 2015 to attract more candidates, and were increased an additional dollar more recently. Thus, I apply the $21 an hour figure in calculating front pay.

[12] Although much of the front pay hearing, and the majority of SkyWest's proposed findings (*see* **Defendant SkyWest Airlines Inc.'s [Proposed] Amended Findings of Fact, Conclusions of Law, and Order** [#245], filed September 19, 2018), were devoted to a discussion of Mr. Hayes's various positions from 2015 through the time of trial, the jury already determined Mr. Hayes adequately mitigated his damages during the period between his termination by SkyWest and the time of trial. (**See Jury Verdict** ¶¶ 6-7 at 3 & ¶¶ 15-16 at 5 [#149], filed September 25, 2017.) The majority of this evidence therefore is irrelevant to the determination of front pay, which runs only from the time of the judgment forward.

whether Mr. Hayes made appropriate efforts to mitigate his damages post-verdict. The burden to prove a failure to mitigate rests with SkyWest. ***Spulak v. K Mart Corp.***, 894 F.2d 1150, 1158 (10th Cir. 1990); ***Hansel v. Public Service Co. of Colorado***, 778 F.Supp. 1126, 1136 (D. Colo. 1991). To meet it, SkyWest must show both that there were suitable positions which Mr. Hayes could have discovered and for which he was qualified and that he failed to use reasonable care to diligence in seeking such positions. ***Zisumbo v. Ogden Regional Medical Center***, 2013 WL 6162992 at *6 (D. Utah Nov. 22, 2013), ***aff'd***, 801 F.3d 1185 (10th Cir. 2015), ***cert. denied***, 136 S.Ct. 1660 (2016) (citing ***Aguinaga v. United Food and Commercial Workers International Union***, 993 F.2d 1463, 1474 (10th Cir. 1993)).

SkyWest has failed to meet this burden. Contrary to SkyWest's arguments, I find and conclude by at least a preponderance of the evidence that Mr. Hayes's move to Memphis was a direct and proximate result of SkyWest's illegal employment discrimination and retaliation. To suggest, as SkyWest does, that Mr. Hayes "voluntarily" quit his job to follow his wife to Memphis is ludicrous. Mr. Hayes was working a part-time job at United Airlines and testified, credibly, that he and his wife could not survive on his salary alone.[13] Because Mrs. Hayes found a job first, the

---

[13] Even if the jury had not already determined this issue in Mr. Hayes's favor, I would find that his decision to take the job with United was appropriate and sufficient mitigation. Although his prior position with Signature Flight Group did pay more per hour, Mr. Hayes testified compellingly that his primary consideration in seeking a job with United was to secure the best medical benefits he could. Given his medical condition, his decision was rational and justified. Mr. Hayes further testified, again credibly and without contradiction, that there were no prospects for full-time positions with United.

couple relocated.[14]

Thereafter, Mr. Hayes made (and indeed, continues to make)[15] reasonable, diligent efforts to secure a suitable position – posting his resume on job websites, registering with staffing agencies, and making in-person visits to potential employers to inquire about available positions. Nevertheless, he does not have the network of contacts in Memphis he enjoyed in Denver, and the economy of Memphis is not as robust as that in Denver. It therefore is hardly surprising that Mr. Hayes has struggled to find a better situation than that he finds himself in presently.

Indeed, at every turn, Mr. Hayes has done what any of us would do in his circumstances – try to make the best decision, for himself and his family, he could given the challenges he faced. To insinuate, as SkyWest does, that Mr. Hayes seeks to "sit idly by and be compensated for doing nothing" (*see* **Def. Proposed Findings** at 13-14 [#245], filed September 19, 2018 (quoting ***Cassino v. Reichhold Chemicals, Inc.***, 817 F.2d 1338, 1347 (9th Cir. 1987), ***cert. denied***, 108 S.Ct. 785 (1988)), is not only insulting, but plainly contrary to all the evidence presented both at the trial and the front pay hearing. I thus find and conclude that front pay should not be reduced, let alone denied, for failure to mitigate.

---

[14] Relatedly, I reject any argument that Mr. Hayes has failed to mitigate damages by not seeking employment with Simplicity now. Although both Mr. Hayes and his wife would like to return to Denver, his wife remains employed in Memphis. Mrs. Hayes's job has always paid more than any position Mr. Hayes has held, or even has aspired to hold, and it should go without saying that married people must make decisions that are best for them both. Having forced Mr. Hayes and his wife to uproot their lives once, SkyWest cannot require them to relocate again under the guise of appropriate mitigation. To insinuate otherwise is, at least in the twenty-first century, truly Neolithic.

[15] SkyWest's suggestion that Mr. Hayes stopped looking for work in April 2017 does not bear scrutiny. This argument is based on the fact that the latest-dated entry in Hearing Exhibit 9 – comprising a record of positions for which Mr. Hayes applied in the Memphis area – is dated April 2017. However, when questioned on this very issue at trial, Mr. Hayes testified cogently that Exhibit 9 reflected "some of the jobs" he applied for (largely when he first moved to Memphis) and, more specifically, that he had continued to apply for jobs in person after April 2017.

Nor am I persuaded that Mr. Hayes should be denied front pay (either in whole or in part) because he was on medical leave from UGE until just recently. Mr. Hayes's position as a Ramp Agent for UGE is physically demanding work that required him to work outside in all weather conditions. While Mr. Hayes was still receiving dialysis, he was more susceptible to dehydration, a condition exacerbated by Memphis's summertime heat and humidity. Mr. Hayes's doctors were "not supportive" of his decision to take the job with UGE for this very reason. As a result of this confluence of factors, on July 7, 2017, Mr. Hayes collapsed at work. He was placed on medical leave by UGE and was not approved to return to work until September 17, 2018.[16]

However, had Mr. Hayes not been illegally discriminated and retaliated against, he would have been employed as a Trainer for Simplicity. As such, he would have been working indoors, in Denver. Mr. Hayes testified at the front pay hearing that he definitely felt he was capable of performing office work during the period when he was on medical leave from UGE. I find that testimony credible and consistent with all the evidence in the record, and further credit the implicit suggestion that Mr. Hayes would have taken such work with UGE if he had been offered it. I thus find and conclude, by at least a preponderance of the evidence, that absent SkyWest's illegal discrimination and retaliation, Mr. Hayes would not have had the medical crisis which precipitated his medical leave in 2017 and thus that he would have continued to work during that time had he not been illegally fired by SkyWest.

---

[16] Although Mr. Hayes's doctors released him to work with restrictions in September or October 2017, his Station Manager would not approve his return to work. Meanwhile, while he was on leave, Mr. Hayes received word that a donor kidney had become available. On June 6, 2018, he received a kidney transplant. He was cleared by his doctors and approved by UGE to return to work (with some mild restrictions which UGE has agreed to accommodate) on September 17, 2018.

I thus turn to a calculation of an appropriate amount of front pay. Again, although Mr. Hayes is not entitled to a windfall, **Whittington**, 429 F.3d at 1001, he is entitled to that amount of front pay necessary to make him whole, **Davoll**, 194 F.3d at 1143-44.

An award of front pay must take into account amounts Mr. Hayes did or could have earned using reasonable efforts. **Davoll**, 194 F.3d at 1143. As a Trainer for Simplicity, Mr. Hayes would have made $43,680 a year ($21/hr x 40 hrs/wk x 52 wks). By comparison, as a part-time customer service agent for UGE in Memphis, Mr. Hayes makes $10.30 an hour and works about 28 hours a week. Based on those figures, his salary as an employee of UGE is $14,996.80 a year ($10.30/hr x 28 hrs/wk x 52 wks).[17] Mr. Hayes's front pay damages are the difference between these two figures, or $28,683.20 a year.

The employee benefit packages available from both Simplicity and UGE are similar: medical, dental, and vision benefits; the ability to participate in the company's 401(k), short-term disability, life insurance, and accidental death and dismemberment plans; and flight benefits with United Airlines. Although the parties devoted much time and energy at the front pay hearing to valuation of these benefits, the credible and unrebutted testimony of Mr. Hopkins was that such benefits are fairly standard across the industry. I therefore find and conclude by at least a preponderance of the credible evidence that the value of the benefits Mr. Hayes would have received as an employee of Simplicity are at least equal to those he currently receives as an employee of UGE. The calculation thus is a wash, and no adjustment in the annual front pay calculation is

---

[17] I find this figure more accurate than Mr. Hayes's testimony at the front pay hearing to the effect that he earned "about $10,000" a year.

warranted to account for such benefits.

Although Mr. Hayes also suggests he should be awarded further compensation attributable to overtime pay, there is insufficient evidence before me to permit a reasonable calculation of any such amount. Evidence adduced at the front pay hearing demonstrated that overtime was readily available at Simplicity. While Mr. Hopkins earned a not-insubstantial amount of overtime while employed at Simplicity (*see* Hrg. Exh. 5), there is no rational, factual basis for me to conclude that Mr. Hayes would have worked a similar number of overtime hours had he been employed by Simplicity. Given the challenges of his medical condition and his need, until recently, for regular dialysis, I find it unlikely that he would have done so. Even now that Mr. Hayes has a new kidney, and thus might be expected to be able to work more overtime, nothing in the record before me gives me an adequate basis to quantify such a determination. I do not know how many overtime hours either Mr. Hopkins or Mr. Hayes worked,[18] nor am I apprised what Simplicity pays for overtime. Accordingly, I do not increase front pay to account for any overtime pay.

I also find no basis on which to conclude with any degree of certainty that Mr. Hayes would have been promoted to a higher-paying position with Simplicity had he been employed there. Nothing in the record before me suggests what the qualifications for such a position are, nor did Mr. Hayes indicate he would apply for such a job were he employed by Simplicity. I thus do not increase the annual amount of front pay to account for possible future promotions or pay increases.

An award of front pay must specify an end date. ***Davoll***, 194 F.3d at 1143.

---

[18] Mr. Hayes testified only that he worked as much overtime as he could.

Front pay is appropriately cut off "at the point at which the plaintiff finds employment comparable or superior to her old job." **Williams v. Pharmacia, Inc.**, 137 F.3d 944, 954 (7th Cir. 1998). Mr. Hayes testified credibly that he has little prospect of finding comparable employment in Memphis,[19] and although he and his wife would like to return to Denver, I find that Mr. Hayes is not required to return to Denver while his wife still holds a job in Memphis. (**See supra** n. 14.) Thus, although I am not constrained by Mr. Hayes's estimate of how long he intends to work, **Whittington**, 429 F.3d at 1001, I find it appropriate to extend the award of front pay in this case until Mr. Hayes is 65 years old, 13 years from now.[20] **See Wulf v. City of Wichita**, 883 F.2d 842, 873-74 (10th Cir. 1989) ("Since [plaintiff] was 52 years old at the time of his termination, it does not require unreasonable speculation to assume that he would have continued to work . . . had he not been fired.") (citation and internal quotation marks omitted). **See also Davis v. Combustion Engineering, Inc**., 742 F.2d 916, 923 (6th Cir. 1984) ("[T]he award of front pay to a discriminatorily discharged 41 year old employee until such time as he qualifies for a pension might be unwarranted. On the other hand, the failure to make such an award for an employee age 63, likewise discriminatorily discharged, might be an abuse of discretion.").

As with any award of future damages, a front pay award must be discounted to

---

[19] SkyWest seeks to argue that Mr. Hayes found comparable employment back in November 2014 when he accepted a higher paying job with Signature Flight Group. Here again, however, that job is encompassed by the jury's determination of backpay and rejection of SkyWest's failure to mitigate defenses relevant to backpay. Moreover, had the equitable issue of backpay been reserved properly for my determination, **see Bartee.**, 374 F.3d 906, 910 (10th Cir. 2004), I would have reached the same findings and conclusions as the jury.

[20] Mr. Hayes was 52 years old at the time of the front pay hearing and testified he intends to work to age 65.

present value.  ***Jones & Laughlin Steel Corp. v. Pfeifer***, 462 U.S. 523, 537, 103 S.Ct. 2541, 2550, 76 L.Ed.2d 768 (1983) ("[I]n all cases where it is reasonable to suppose that interest may safely be earned upon the amount that is awarded, the ascertained future benefits ought to be discounted in the making up of the award.") (citation and internal quotation marks omitted).  ***See also State of Kansas v. State of Colorado***, 2000 WL 34508307 at *18 (Aug. 31, 2000) (Special Masters report) ("The purpose of discounting future damages to a present value is to allow a court to award damages as a lump sum, rather than ordering a defendant to pay damages in the future as they occur.").  In turn, "[t]he discount rate should be based on the rate of interest that would be earned on the best and safest investments." ***Jones & Laughlin Steel Corp.***, 103 S.Ct. at 2550 (citation and internal quotation marks omitted).

Although courts have taken various approaches to determining present value, the Tenth Circuit has found no abuse of discretion where a trial court first adjusts a plaintiff's future lost earnings for inflation and then discounts that figure to present value.  ***See Hoskie v. United States***, 666 F.2d 1353, 1356 & n.2 (10th Cir. 1981).  "Some courts have sought to avoid the complexity of such computations by assuming that investment interest and inflation rates will normally have a fairly fixed relationship to each other so that a net discount rate may be used that merely reflects the rate by which investment interest normally will exceed inflation." ***Hull by Hull v. United States***, 971 F.2d 1499, 1511 (10th Cir. 1992), ***cert. denied***, 113 S.Ct. 1844 (1993).  Regardless what method is chosen, determination of an award of future damages "should not be converted into a graduate seminar on economic forecasting." ***Jones & Laughlin Steel Corp.***, 103 S.Ct.

16

at 2556 (citation and internal quotation marks omitted).

Mr. Hayes suggests I rely on the inflation-adjusted, net discount rate approach, and I concur.[21] In determining the prejudgment interest rate in this case, I relied on SkyWest's argument for application of the federal underpayment rate provided in 26 U.S.C. § 6621(a)(2), which is equal to the federal short-term interest rate plus three percent. (*See* **Order Re: Plaintiff John Hayes' Motion for Additional Monetary Awards** at 13 & n.16 [#220], filed July 2, 2018.) As I noted, this rate "reflects what plaintiff might have recovered had he placed his money in an investment account, and thus better achieves the goal of fully compensating plaintiff for his damages." (*Id.* at 13.)

The parties agree this rate is appropriate, at least as a starting point, for determination of the discount rate. (***But see supra*** n.22.) The federal short-term interest rate for October 2018, is 2.55 percent. (*See* Internal Revenue Service, **Index of Applicable Federal Rates (AFR) Rulings, RR 2018-19** (available at: https://apps.irs.gov/app/picklist/list/federalRates.html) (last accessed September 21, 2018). *See also* 26 U.S.C. § 6621(b)(3). The applicable underpayment rate therefore is 5.55 percent. The present rate of inflation in the United States as shown by the Consumer Price Index for August 10, 2018 is 2.7 percent. (United States Department of Labor, Bureau of Labor Statistics, Economic News Release, **Consumer Price Index**

---

[21] Relying on the offset approach, the discount rate would be even lower, which would be inappropriate given the length of time the front pay award covers. Moreover, I find no legal authority, and SkyWest has cited none, for its proposal that I apply a discount rate without any adjustment for inflation. To the extent the choice of the inflation rate is "arbitrary," as SkyWest complains, here again the uncertainties involved in the calculation of an award of future damages fall on the party whose illegal discriminatory and retaliatory conduct created the circumstances necessitating the award in the first instance.

**Summary** (available at: https://www.bls.gov/news.release/cpi.nr0.htm) (last accessed September 21, 2018.)[22]  Based on those two figures, the net discount rate is 2.85 percent.  Rates in this range are presumptively reasonable, *see Jones & Laughlin Steel Corp.*, 103 S.Ct. at 2556, and I find and conclude that this rate is appropriate here.

The present value of a stream of fixed annual payments is calculated using the formula P = PMT x ((1 - (1 / (1 + r) ^ n)) / r), where "P" equals the present value of an annuity stream, "PMT" equals the dollar amount of each annuity payment, "r" equals the discount rate, and "n" equals the number of periods in which payments will be made. (*See* Investopia, **Present Value of an Annuity** (available at: https://www.investopedia.com/terms/p/present-value-annuity.asp ) (last accessed September 21, 2018).)[23]  Based on an annual payment of $28,683.20, a discount rate of 2.85 percent, and a term of 13 years, that formula yields a total of $307,991.63.  (*See* Ultimate Calculators.com, **Present Value of an Annuity**) (available at: http://www.ultimatecalculators.com/present_value_annuity_calculator.html) (last accessed September 21, 2018).)  Thus, Mr. Hayes is entitled to $307,991.63 as damages for front pay.

**THEREFORE, IT IS ORDERED** that plaintiff, John Hayes, is awarded front pay in

---

[22] Courts have found it appropriate to take judicial notice of the Consumer Price Index as a source "whose accuracy cannot reasonably be questioned." **FED. R. CIV. P.** 201(b)(2).  *See Harrigan v. Colvin*, 2015 WL 1731298 at *2 n.1 (W.D. Okla. April 14, 2015); *United States v. 99,223.7238 Acres of Land*, 2009 WL 10675512 at *20 (D.N.M. Dec. 14, 2009).

[23] The formula Mr. Hayes suggests, based on the district court's decision in *Buonanno*, 313 F.Supp.2d at 1085, is appropriate when calculating the present value of a single payment.  The formula I employ herein is better suited to determine the present value of a series of future payments.

the amount of $307,991.63.

Dated September 24, 2018, at Denver, Colorado.

**BY THE COURT:**

/s/ Bob Blackburn
Robert E. Blackburn
United States District Judge