**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 15-cv-02015-REB

JOHN HAYES,

      Plaintiff,

v.

SKYWEST AIRLINES, INC.,

      Defendant.

---

## ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL

---

**Blackburn, J.**

    The matter before me is **Defendant's Motion for New Trial** [#265],[1] filed

October 24, 2018.  I deny the motion.

## I.  JURISDICTION

    I have jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal

question).

## II.  STANDARD OF REVIEW

    When a case has been tried to a jury, a new trial may be granted "for any of the

reasons for which new trial have heretofore been granted in actions at law in the courts

of the United States."  **FED. R. CIV. P.** 59(a)(1)(A).  In matters decided without a jury, the

court may grant a new trial on any issue "for any reason for which a rehearing has

heretofore been granted in a suit in equity in federal court."  **FED. R. CIV. P.** 59(a)(1)(B).

---

    [1]  "[#265]" is an example of the convention I use to identify the docket number assigned to a
specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this
convention throughout this order.

***See also McHargue v. Stokes Division of Pennwalt Corp.***, 912 F.2d 394, 396 (10th Cir. 1990).

In either instance, a motion for new trial "is not regarded with favor and should only be granted with great caution," ***United States v. Kelley***, 929 F.2d 582, 586 (10th Cir. 1991), and then "only to correct manifest errors of law or to present newly discovered evidence," ***Elm Ridge Exploration Co., LLC v. Engle***, 721 F.3d 1199, 1216 (10th Cir. 2013). ***See also*** Charles Alan Wright et al., 11 *Federal Practice & Procedure Civil* § 2804 (3rd ed.) ("A motion for a new trial in a nonjury case . . . should be based upon manifest error of law or mistake of fact, and a judgment should not be set aside except for substantial reasons.") (footnote omitted). The decision whether to grant a new trial is committed to the sound discretion of the trial court. ***Kelley***, 929 F.2d at 586.

### III.  ANALYSIS

Plaintiff John Hayes's claims for retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654, and for discrimination and retaliation under the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, were tried to a jury on September 18-22, 2017. The jury returned verdicts in favor of Mr. Hayes on all claims submitted to it and awarded substantial compensatory and punitive damages. Defendant SkyWest Airlines, Inc. ("SkyWest") now moves for a new trial on numerous grounds under Rule 59(a)(1)(A). Pursuant to Rule 59(a)(1)(B), it also seeks reconsideration of my order granting Mr. Hayes's post-trial motion for an award of front pay. (***See* Findings of Fact, Conclusions of Law, and Orders Re: Front Pay** [#247], filed September 24, 2018 [hereinafter "**FOF & COL**"].) For the reasons set forth herein,

I deny the motion in all particulars.

## A.  Evidence of Mr. Hayes's Employment with UGE

SkyWest argues first that Mr. Hayes withheld material evidence regarding his subsequent employment as a ramp agent with United Ground Express ("UGE") in Memphis, Tennessee.  More specifically, SkyWest maintains Mr. Hayes failed to apprise it timely that, beginning in July 2017 and continuing through the time of trial, he had been placed on medical leave by UGE and thus was not working.  The circumstances of UGE's decision were set forth in my findings awarding Mr. Hayes front pay:

> Mr. Hayes's position as a Ramp Agent for UGE is physically demanding work that required him to work outside in all weather conditions.  While Mr. Hayes was still receiving dialysis, he was more susceptible to dehydration, a condition exacerbated by Memphis's summertime heat and humidity.  Mr. Hayes's doctors were "not supportive" of his decision to take the job with UGE for this very reason.  As a result of this confluence of factors, on July 7, 2017, Mr. Hayes collapsed at work.  He was placed on medical leave by UGE and was not approved to return to work until September 17, 2018.

(**FOF & COL** at 12 (footnote omitted).)  SkyWest insists a new trial is warranted based on the failure to provide this evidence prior to trial.

I disagree.  To warrant a new trial based on newly discovered evidence, SkyWest must show each and all of the following:

> (1) the evidence was newly discovered since the trial; (2) [the moving party] was diligent in discovering the new evidence; (3) the newly discovered evidence could not be merely cumulative or impeaching; (4) the newly discovered evidence [was] material; and (5) that a new trial, with the newly discovered evidence[, will] probably produce a different result.

3

***Joseph v. Terminix International Co.***, 17 F.3d 1282, 1285 (10th Cir. 1994) (citation

and internal quotation marks omitted).  Even assuming *arguendo* SkyWest can satisfy

the first three elements of the relevant standard, I cannot find Mr. Hayes's

circumstances at UGE were material, much less that they would have changed the

outcome of the trial.

Evidence is material if it goes to "one of the most significant aspects" of the case.

***Graham by Graham v. Wyeth Laboratories, Division of American Home Products***

***Corp.***, 906 F.2d 1399, 1417 (10th Cir.), ***cert. denied***, 111 S.Ct. 511 (1990).  While

SkyWest focuses myopically on whether Mr. Hayes could perform the lifting duties of a

Ramp Agent as SkyWest defined that position,[2] Mr. Hayes never maintained he could

perform that aspect of the job.  Indeed, it was quite clear he could not.  Nevertheless, it

was also clear from the evidence presented at trial that Mr. Hayes could perform, and

desperately wished to perform, other jobs which did not require lifting beyond his

medical restrictions,[3] including the very job he was performing at the time SkyWest

---

[2] While the employer has the right to define the essential functions of a job, those functions must be, *inter alia*, "uniformly enforced[] and consistent with business necessity."  ***Mason v. Avaya Communications, Inc.***, 357 F.3d 1114, 1119 (10th Cir. 2004).  SkyWest presented no evidence as to either of these key requirements.

[3] SkyWest insists Mr. Hayes's wife perjured herself by giving the jury the false impression that Mr. Hayes was working at the time of trial.  Even if I could find Mrs. Hayes intended to mislead the jury – which neither the evidence nor Mrs. Hayes's testimony and demeanor on the stand give me reason to believe – because her testimony did not go to a material matter, her statements do not warrant a new trial in any event.  ***See United States v. Massey***, 48 F.3d 1560, 1573 (10th Cir.) ("The elements of perjury are that a witness: (1) when testifying under oath, gives false testimony; (2) concerning a material matter; (3) with willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory."), ***cert. denied***, 115 S.Ct. 2628 (1995).

forced him back on medical leave in August, 2014.[4]

More importantly, whether another employer determined Mr. Hayes could not work as a "ramp agent," as that employer defined the position, does not speak to the material question that was at the center of this case:  *SkyWest's* motivations for forcing Mr. Hayes to go back on medical leave and refusing to hire him for other available positions within the company.  Those decisions are specific to the relationship between Mr. Hayes and SkyWest.  SkyWest's intentions in dealing with Mr. Hayes could not have been informed by the actions of a different employer in a different city occurring several years after the events in this case.[5]  If anything, allowing this evidence would have risked jury confusion over the relevant issues in the case.[6]

Nor would this evidence been likely to change the jury's award of punitive damages, for the same reasons.  The jury was tasked to consider whether SkyWest acted with malice or reckless indifference to Mr. Hayes's federally protected rights.  *See* 42 U.S.C. § 1981a(b)(1).  That standard is met when the evidence shows the employer knew it was acting in violation of federal law or that it acted "in the face of a

---

[4] While Mr. Hayes did suffer a fainting spell at work after he returned to work, the jury quite reasonably could find that SkyWest's predetermination to force Mr. Hayes to again take leave without engaging in the interactive process with him after this incident violated the ADA.  Moreover, the evidence also supported a conclusion that Mr. Hayes was qualified for at least some of the myriad alternative jobs for which he applied, but for which SkyWest failed to hire him, for reasons the jury properly found unworthy of credence.

[5] To the extent such evidence might have any probativity, it would have shown (as it did at the front pay hearing) that UGE allowed Mr. Hayes to remain on leave for more than a year, which plainly would not have made SkyWest's decisions as to Mr. Hayes appear more reasonable.

[6] As explained in more detail below, I further reject any suggestion that Mr. Hayes's backpay damages should have been cut off as of the date he was placed on medical leave by UGE.  No one has ever suggested Mr. Hayes could not work at all, and indeed, the evidence plainly showed he was motivated to work and proactive in seeking work despite his serious medical issues, a finding I have reiterated on multiple occasions throughout this litigation.

perceived risk that its action will violate federal law." ***Kolstad v. American Dental Association***, 527 U.S. 526, 535-36, 119 S.Ct. 2118, 2124-25, 144 L.Ed.2d 494 (1999). Here again, the focus is entirely on why SkyWest knew and how it acted toward Mr. Hayes. Whether it was reasonable for another employer to place Mr. Hayes on medical leave, three years after the events in this case, simply would not have made it more or less likely that SkyWest did not understand its obligations to Mr. Hayes under the disability discrimination laws.

Because this evidence was not material, it would not have changed the outcome of this trial. The jury heard copious evidence that fully supported its determinations that SkyWest intentionally discriminated and retaliated against Mr. Hayes. Having presided over this trial, I have no trouble in concluding that evidence of UGE's treatment of Mr. Hayes would not have altered the jury's perception of the reasonableness or legality of SkyWest's decisions.

### B.  Contempt Findings/Plaintiff's Closing Arguments

SkyWest next alleges error in my advisements to the jury following the three contempt citations that occurred during the course of the trial. It claims these comments, together with arguments made by counsel for Mr. Hayes during his rebuttal closing, unfairly prejudiced the jury against it. Stripping away SkyWest's hyperbole about these matters, none of these alleged errors, either Individually or collectively, warrants a new trial. ***See United States v. Lopez-Medina***, 596 F.3d 716, 741 (10th Cir. 2010) ("Where, as here, a defendant has failed to establish the existence of multiple non-reversible errors. . . he cannot benefit from the cumulative error doctrine.") (citation and internal quotation marks omitted).

Regarding the contempt citations against SkyWest's paralegel, Ann Rutledge, and its corporate representative, Jaime Sorensen, as well as against the juror implicated in Ms. Sorensen's contempt, I note that SkyWest failed to lodge a contemporaneous objection to the advisements I gave to the jury about the absence of these individuals from the courtroom.  My review therefore is limited to plain error only.  *See Henderson v. United States*, 568 U.S. 266, 277, 133 S.Ct. 1121, 1129, 185 L.Ed 2d 85 (2013); *United States v. Gonzalez-Huerta*, 403 F.3d 727, 744-45 (10th Cir.), *cert. denied*, 126 S.Ct. 495 (2005).

I perceive no error, much less plain error, in this regard.  First, and contrary to SkyWest's reckless misrepresentation, I did not reprimand or dismiss any of these three individuals in the presence of the jury.  When I witnessed what I perceived to be Ms. Rutledge's attempts to coach Ms. Sorensen as the latter was asked to testify about a particular trial exhibit, I immediately called the parties to the bench to apprise them of what I had seen and then dismissed the jury, telling them only that "a matter has arisen that requires our attention outside your hearing and your presence altogether." (*See* Trial Tr. at 736-738.)  After questioning Ms. Rutledge, who admitted she had "gestured don't answer a question about [the document]," I found her in direct contempt of court and dismissed her from the remainder of the trial.  (Trial Tr. at 739-740.)

I then allowed the parties to make "any record that may be indicated or implicated by the Court's finding of direct contempt of Court."  (Trial Tr. at 740.)  Counsel for SkyWest was permitted to speak first and acknowledged that some instruction to the jury to apprise it of the fact that Ms. Rutledge had been removed was called for.  Counsel for SkyWest requested I examine Ms. Sorensen to determine

whether she had witnessed Ms. Rutledge's attempt to coach her, which examination I

conducted on the record but still outside the presence of the jury. (Trial Tr. at 740-741.)

Counsel for Mr. Hayes requested I provide a brief explanation to the jury as to why Ms.

Rutledge had been dismissed, arguing that such bore on the credibility of Ms.

Sorensen's testimony. (Trial Tr. at 742, 744.)

After examining Ms. Sorensen, who said she saw Ms. Rutledge "doing

something" but "didn't catch a hint or anything else," I informed the parties as follows:

> I intend to advise the jury that Ms. Ann Rutledge, the
> paralegal for the defendant, attempted to communicate
> improperly with the witness during examination by Mr.
> Maxon; that the Court found that to be highly inappropriate,
> contemptuous, and has dismissed Ms. Rutledge.

(Trial Tr. at 746.) I then stated my intent to question the jury as a group as to whether

they witnessed any attempted communication from Ms. Rutledge to Ms. Sorensen. As

noted previously, SkyWest lodged no objection to that proposal.[7] Only then did the jury

return to the courtroom, where I advised them:

> Ladies and gentlemen of the jury, in apparent reaction and
> response to Mr. Maxon's last question to Ms. Sorensen, the
> witness on the stand, the paralegal for the defendant
> SkyWest, Ann Rutledge, attempted to communicate
> improperly, inappropriately, with Ms. Sorensen. As a result, I
> have banished Ms. Rutledge from the courtroom and this
> trial.

(Trial Tr. at 747.) When, in response to my query, no juror acknowledged having seen

the attempted communication, the trial resumed.

---

[7] Indeed, counsel for SkyWest stated that "I think this Court is in the best position to make that
determination [as to whether any juror was prejudiced] and give the appropriate remedy and instruction to
the jury." (Trial Tr. a 745.)

Given these truly extraordinary circumstances, there is no manner in which my advisement to the jury could be construed to constitute error, let alone to have so grievously effected the fairness of the trial as to amount to plain error. Any attempt to influence the testimony of a witness is a gravely serious matter; when such actions occur in open court, in the presence and possible view of the jury, the risk of irreparable damage to the fairness and integrity of the trial is extremely high. If any of the jurors had witnessed Ms. Rutledge's behavior, as I did, a mistrial almost certainly would have been indicated.[8] I could not possibly have asked the jurors whether they had been seen these actions had I not informed them, succinctly and in the most general terms, what occurred. Telling the jury that such "improper[], inappropriate[]" conduct had resulted in Ms. Rutledge being "banished from the courtroom and this trial" was meant to impress on them the profound seriousness of the infraction, so they would be encouraged to take their own responses as to whether they had seen such actions with the same degree of gravity.

Nor did my subsequent advisement to the jury about the dismissals of Ms. Sorensen and the juror with whom she communicated the very evening after Ms. Rutledge's dismissal constitute error, plain or otherwise.[9] Having three serious acts of

_____

[8] I utterly reject any intimation from SkyWest that it would have moved for a mistrial had I not stated that I "would not visit the sin of a paralegal for the defendant on Mr. Hayes." (Trial Tr. at 742.) My subsequent discussion with counsel for Mr. Hayes about polling the jury made plain that, had one of the jurors actually seen Ms. Rutledge's actions, a mistrial was the likely outcome. (*See* Trial Tr. at 743-744.) Following that exchange, counsel for SkyWest positively affirmed that "[t]he defendant does not want a mistrial either, Your Honor," and instead suggested I simply exclude any juror who may have witnessed these events. (Trial Tr. at 745.)

[9] I find SkyWest's attempts to absolve Ms. Sorensen of responsibility for conversing with this juror truly unfathomable. On the first day of trial, as part of my opening remarks to the venire, I made plain that "[o]utside of court, avoid any contact or communication with anyone connected with this case, including . . . the corporate representative of the defendant . . ." (Voir Dire Tr. at 8.) I later expatiated further:

contempt occur within less than twelve hours of each other during a trial is truly

unprecedented in all my time on the bench.[10]  These contempts occurred at the very

end of a long and hard-fought trial, which itself was preceded by several years of long

and hard-fought litigation between the parties.  A mistrial is never a trivial matter, but it

would have been particularly devastating in this case.  As with Ms. Rutledge's conduct,

these indirect acts of contempt also implicated the integrity and fairness of the trial,

except now a juror was implicated.[11]  Moreover, Ms. Sorensen's and the juror's absence

from the proceedings would have been conspicuous to the jury.[12]

Given the totality of the circumstances, it was vital to impress on the remaining

jurors the seriousness of these offenses and of their consequences.  Informing the jury

that these two individuals would be subject to contempt proceedings was intended to do

---

Now, on behalf of all of us directly involved in the trial of this case, to all of you as prospective jurors, please accept our apologies.  Why? Because outside of the courtroom we're going to ignore you, and it gets worse.  It's deliberate, intentional on our part, but there is a why, and the why is this.  We're going to do everything we can to preserve the integrity of these important trial proceedings and to avoid even an appearance of impropriety.  So please accept our group apology in advance.

(Voir Dire Tr. at 9.)  After the jury was empaneled, I reminded them of these and my other admonitions regarding their conduct each and every time I dismissed them from the courtroom.  It simply defies belief that counsel and their representatives did not understand they were not to speak to any member of the jury under any circumstances.

[10]  As was the fourth contempt citation against SkyWest's corporate counsel that occurred after the jury rendered its verdict, which is not implicated by this motion.

[11]  I utterly reject SkyWest's suggestion that Ms. Sorensen's conversation did not go to the merits of the trial, with the tacit insinuation that the conversation therefore was not as serious a matter or did not warrant the sanction imposed.  The conversation revolved around the "great job" the juror felt Ms. Sorensen had done as a witness (which Ms. Sorensen said she had tried to "keep . . . clear and concise") and discussed the "big job" the jury faced in this "critical case."  (**Motion App.**, Exh. I.)  At the very least, this exchange implicated Ms. Sorensen's credibility as a witness, a matter which is always inextricably bound up with the way in which the jury perceives the merits of the case.

[12]  Ms. Sorensen was the corporate representative for SkyWest and had been present at counsel table throughout the trial.

just that.  (**See** Trial Tr. at 822.)

As for the comments made in rebuttal closing on behalf of Mr. Hayes, I see no basis on which to conclude that any of these statements require a new trial.  **See Whittenburg v. Werner Enterprises Inc.**, 561 F.3d 1122, 1127 (10th Cir. 2009) ("The trial judge is in the best position to determine the prejudicial effect of improper arguments, and thus whether a new trial is warranted.") (citation and internal quotation marks omitted).  Contrary to SkyWest's characterizations, these comments were not improper *ad hominem* attacks on counsel for SkyWest, but rather arguments as to the believability of the positions counsel advanced in support of his client's position.  By definition, rebuttal argument is a comment on and critique of the defense's closing argument, and counsel is afforded "considerable leeway" in zealously advocating for his client.  **Lambert v. Midwest City Memorial Hospital Authority**, 671 F.2d 372, 375 (10th Cir. 1982).  Counsel for SkyWest made arguments based on what he perceived the evidence showed; counsel for Mr. Hayes simply responded with his contrary view. Counsel for Mr. Hayes did not call counsel for SkyWest a liar,[13] but rather stated only that the positions he advocated on behalf of SkyWest were not supportable on the evidence.[14]  **See United States v. Kravchuk**, 335 F.3d 1147, 1153 (10th Cir.) (although improper to refer to defendant as a liar, it is not *per se* improper to refer to his testimony

---

[13]  Although even if he had, such an improper statement would not necessarily have warranted anything beyond a curative instruction, and certainly would have constituted harmless error in the context of this trial as a whole.  **See United States v. Kvavchuk**, 335 F.3d 1147, 1154 (10th Cir.), **cert. denied**, 124 S.Ct. 279 (2003).

[14]  These included that Mr. Hayes had been furloughed rather than terminated (Trial Tr. at 919), that he was an "expensive employee" because of his medical issues (Trial Tr. at 922-923), and that the offer of a position in Salt Lake City had been a reasonable accommodation (Trial Tr. at 930-932).

as a lie), ***cert. denied***, 124 S.Ct. 279 (2003).  That he referred back to defense

counsel's closing arguments in so doing does not transform his remarks into improper

*ad hominem* attacks.

Moreover, I am confident that in the context of this trial as a whole, these

remarks did no influence the jury's verdict.  ***Lambert***, 671 F.2d at 375.  With respect to

the single statement to which SkyWest actually objected, I immediately issued a

curative instruction, telling the jury that it was for them to "decide who and what to

believe from the evidence in this case."  (Trial Tr. at 937-938.)[15] ***Lopez-Medina***, 596

F.3d at 740  (improper remarks which are not pervasive do not require reversal when

"the jury is advised that arguments of counsel are not evidence").  Although SkyWest

would have me infer prejudice from the size of the jury's punitive damages award,[16] I

have no doubt that it was the strength of Mr. Hayes's claims, and the weaknesses of

SkyWest's explanations and defenses, rather than any improper passion or favoritism,

that brought about that result.[17]  No new trial is warranted on this basis.

---

[15] In addition, my written instructions to the jury again apprised them that "[t]he unsworn statements and arguments of an attorney are not evidence.  What the attorneys say to you or show to you during opening statements and closing arguments is not evidence."  (**Jury Instruction No. 1** at 2 [#145], filed September 25, 2017.)

[16] SkyWest points out that the punitive damages awarded were "nearly seven times the statutory cap for punitive and general damages combined."  (**Motion** at 13.)  Of course, the jury was not informed that damages were limited by statute, much less at what level.  Nor was the jury informed that its award of compensatory damages under the FMLA would overlap with any award of backpay under the ADA.  To the contrary, the jury was specifically instructed it could award any category of damages on any of Mr. Hayes's claims for relief and "[t]he court will ensure that damages in any specified category are awarded to plaintiff only once."  (**Jury Instruction No. 32** [#145], filed September 25, 2017.)  That the jury awarded both types of damages thus is no evidence of prejudice.  (***See id.***)

[17] As I have noted previously in this case on multiple occasions, SkyWest throughout this litigation has been wholly unable to perceive how its treatment of Mr. Hayes, a long-term, dedicated employee who was eager and willing to work despite his debilitating, progressive congenital illness, might read to an ordinary, reasonable observer.

## C.  Rule 602 Objections

SkyWest next posits the trial was littered with evidentiary errors because testimony was admitted without first requiring the proponent to lay a proper foundation. More specifically, it objects to my practice of admitting testimony over a Rule 602 objection if the question is prefaced with some variant of the statement "If you know, and only if you know . . ."  In SkyWest's estimation, a witness's own affirmation that she has personal knowledge of a matter is insufficient to establish foundation under Rule 602.

This is utter nonsense.  Rule 602 expressly provides "[e]vidence to prove personal knowledge may consist of the witness's own testimony."  **FED. R. CIV. P.** 602. "[P]ersonal knowledge may be established by the testimony of an in court witness without any elaborate foundation separate from the witness' description of the events in question."  *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1132 (10th Cir.), *cert. denied*, 135 S.Ct. 768 (2014) (citation and internal quotation marks omitted).  "This standard is not difficult to meet":

> A court should exclude testimony for lack of personal knowledge "only if in the proper exercise of the trial court's discretion it finds that the witness could not have actually perceived or observed that which he testifies to."  *United States v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir. 1997) (quotations omitted); *see also* 1 Kenneth S. Broun, *McCormick on Evidence* § 10 n. 6 (7th ed. 2013) ("[T]he foundational fact of personal knowledge under Rule 602 falls under Rule 104(b); and the trial judge plays only a limited, screening role, merely deciding whether the foundational testimony would permit a rational juror to find that the witness possesses the firsthand knowledge."); [27 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure: Evidence*] § 6022 [(2nd ed.2007)] ("[T]he

> testimony is excluded only if, as a matter of law, no juror could reasonably conclude that the witness perceived the facts to which she testifies.").

*Id.* Any purported infirmity in that foundation could and should have been explored on cross-examination. *See id.* at 1133 ("There is nothing in the record to suggest that [the witness] did not, or even likely did not, have such personal knowledge. [The opponent] had ample opportunity to cross-examine [the witness], or to take him on *voire dire* [sic], to establish any lack of personal knowledge or opportunity for same, and he could have requested that this be done out of the presence of the jury.") (citation and internal quotation marks omitted).

Moreover, as to each of the specific examples SkyWest cites in support of this argument,[18] each witness's testimony as a whole made abundantly clear the basis for his or her personal knowledge of the question. For example, Kiana Jodell testified she knew SkyWest's valuation from having read the company's own press releases on the topic. (Trial Tr. at 98.) Robert Hopkins was able to testify as to how much Mr. Hayes would have earned had he been hired as a safety supervisor by Simplicity because he himself had been hired for that position. (Trial Tr. at 450-452, 458-459.) It also was proper to allow him to testify as to whether the candidate who SkyWest hired as a safety supervisor instead of Mr. Hayes was qualified for that position, as he had worked with

---

[18] I decline any implicit invitation from SkyWest to peruse the transcript for other instances in support of its arguments. *See Gross v. Burggraf Construction Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995); *Safe Streets Alliance v. Alternative Holistic Healing, LLC*, 2018 WL 3861156 at *3 n.5 (D. Colo. Aug. 14, 2018) (slip op.). *See also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

the candidate previously.  (Trial Tr. at 429-430, 445-449.)[19]

A new trial therefore is not warranted on this basis either.

### D.  Backpay and Punitive Damages Awards

SkyWest next challenges the jury's awards of backpay and punitive damages

under the ADA as speculative and insupportable on the evidence.  These contentions

are groundless.

The Tenth Circuit has affirmed that, as the finder of fact, a jury has "wide latitude

and discretion" in determining an appropriate award of damages:

> The jury holds the exclusive function of appraising credibility,
> determining the weight to be given to the testimony, drawing
> inferences from the facts established, resolving conflicts in
> the evidence, and reaching ultimate conclusions of fact.  It is
> a fundamental legal principle that the determination of the
> quantum of damages in civil cases is a fact-finder's function.
> The jury, who has the first-handed opportunity to hear the
> testimony and to observe the demeanor of the witnesses, is
> clothed with a wide latitude and discretion in fixing damages,
> pursuant to the court's instructions, deemed proper to fairly
> compensate the injured party.  Further, the amount of
> damages awarded by a jury can be supported by any
> competent evidence tending to sustain it.

***Prager v. Campbell County Memorial Hospital***, 731 F.3d 1046, 1063 (10th Cir. 2013)

(internal citations and quotation marks omitted).  Given the breadth of the jury's

discretion in this regard, SkyWest "carries the heavy burden of demonstrating that the

verdict was clearly, decidedly, or overwhelmingly against the weight of the evidence."

---

[19]  SkyWest's other specific objections involve testimony in which the witness in question either
testified he did *not* have personal knowledge of the matters about which he was asked (*see* Trial Tr. at
652-655 (testimony of Josh Vallejo re: job coding procedures)) or was questioned specifically to establish
that she did not have knowledge of a particular matter (Trial Tr. at  200-201 (testimony of Andrea Roberts
re: whether allowing Mr. Hayes to continue working with a lifting restriction would violate any SkyWest
policy)).

***Hill v. J.B. Hunt Transport, Inc.***, 815 F.3d 651, 668 (10th Cir. 2016) (citation and internal quotation marks omitted).  "[A] jury's determination of fact is considered inviolate absent an award so excessive or inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial."  ***Id.*** (citation and internal quotation marks omitted).

Nothing in the record of this case comes anywhere close to meeting that exacting standard.  The jury's backpay award of $150,000 can easily be traced to the evidence establishing what Mr. Hayes could have expected to make (with benefits, and less what he actually did earn) had he been employed by Simplicity in the approximately three years between the date he was forced out on unpaid medical leave by SkyWest and the date of the jury's verdict.[20]  Nor was it purely speculative (as SkyWest suggests) that Mr. Hayes would have been hired by Simplicity – all former SkyWest Certified Station Trainers who applied to Simplicity were hired by the company, and Robert Hopkins (who had authority to hire for Simplicity) testified he would have hired Mr. Hayes for that position.  SkyWest's suggestion that Mr. Hayes's entitlement to backpay should be measured against the very job he was denied as a result of SkyWest's discrimination and retaliation simply was not one the jury was required to accept.

Nor was the jury's award of punitive damages excessive.  I have already found appropriate the jury's determination that SkyWest acted with the requisite "malice or

---

[20]  As I informed the parties during the trial, it always has been my position that backpay is an equitable determination for the court, at least in this circuit.  ***See*** 42 U.S.C. § 2000e-5(g)(1) (appropriate relief "may include . . . back pay . . . or any other equitable relief as the court deems appropriate[.]");  ***Bartee v. Michelin North America, Inc.***, 374 F.3d 906, 910 (10th Cir. 2004) ("A district court's decision to award back or front pay under the ADA is an equitable one.").  However, because both parties submitted proposed instructions addressing the issue of backpay, I found they had consented to have the issue determined by the jury.  (Trial Tr. at 453-454, 787.)  ***See*** Fed. R. Civ. P. 39(c)(2).

reckless indifference to [Mr. Hayes's] federally protected rights." (*See* **Order Denying**

**Defendant's Renewed Motion for Judgment as a Matter of Law** at 5-6 [#282], filed

July 3, 2019) (quoting 42 U.S.C. § 1981a(b)(1).)  An award of punitive damages

therefore was appropriate, although the jury's substantial award later was reduced to

comply with the applicable statutory cap.  42 U.S.C. § 1981a(b)(3)(D) (for employers of

SkyWest's size, "[t]he sum of the amount of compensatory damages awarded under this

section . . . and the amount of punitive damages awarded under this section, shall not

exceed, for each complaining party . . . $300,000").  (*See* **Order Granting Stipulated**

**Motion To Amend Final Judgment and for Entry of Amended Final**

**Judgment** [#254], filed October 12, 2018.)  The reduction rendered the punitive

damage award precisely equal to the amount of backpay awarded under the ADA.

That award is most certainly not excessive.[21]  Indeed, to reduce it further would

constitute unwarranted judicial ingerence wreaking impermissible violence to the jury's

verdict:

> Section 1981a establishes a regime whereby the jury will set
> the damages, without reference to the statutory cap.  Then, if
> the damages awarded exceed the relevant limit, the district
> court shall reduce the amount so that it conforms to the
> statutory cap.  The statutory cap is not the limit of a
> damages spectrum, within which the judge might recalibrate
> the award given by the jury.  To treat it as such would be to
> invade the province of the jury, something explicitly contrary
> to the purposes of 1981a.  Thus, only when an award would
> shock the judicial conscience, and constitute a denial of

---

[21]  Although I find it appropriate to judge the alleged excessiveness of the punitive damage award
by the amount SkyWest ultimately will be made to pay, rather than the amount originally awarded by the
jury, I would not have found the jury's original award excessive either.  Given the strength of Mr. Hayes's
claims and the evidence of SkyWest's valuation, an award of $2 million in punitive damages seems
entirely appropriate.

> justice, for example because it would result in the financial
> ruin of the defendant or constitute a disproportionately large
> percentage of a defendant's net worth, will we reduce the
> award below the statutory cap.

*Deters v. Equifax Credit Information Services, Inc.*, 202 F.3d 1262, 1273 (10th Cir.

2000) (internal citations and quotation marks omitted). Given all the evidence in this

case, the punitive damages ultimately awarded against SkyWest in this case do not

shock the judicial conscience, and thus do not warrant a new trial.

### E.  FMLA Retaliation

At least twice previously, SkyWest has argued that Mr. Hayes's FMLA retaliation

claim was infirm on the same bases advanced here. (*See* **Defendant's Renewed**

**Motion for Judgment as a Matter of Law** at 3-8 [#263], filed October 24, 2018;

**Defendant SkyWest Airlines, Inc.'s Response to Plaintiff's Motion for Additional**

**Monetary Awards** at 10-21 [#204], filed March 14, 2018.) Having already considered

and rejected these arguments, I see no reason to rehearse them again here.

(*See* **Order Denying Defendant's Renewed Motion for Judgment as a Matter of**

**Law** at 3-5 [#282], filed July 3, 2019; **Order Re: Plaintiff John Hayes' Motion for**

**Additional Monetary Awards** at 9-12 [#220], filed July 2, 2018.) Suffice to say that a

new trial is not warranted on this basis.

### F.  Front Pay

SkyWest acknowledges that I have already found Mr. Hayes was entitled to front

pay despite the elimination of his original job with SkyWest, and thus objects here only

to preserve that issue. I overrule that objection for the same reasons stated and

authorities cited I set forth previously. (*See* **Order Re: Plaintiff John Hayes' Motion**

**for Additional Monetary Awards** at 7-9 [#220], filed July 2, 2018.)

Separately, however, SkyWest also argues that it is entitled to a new hearing on the issue of front pay under Rule 59(a)(1)(B). I disagree and find that, far from showing any manifest error of law or mistake of fact, SkyWest has done little more than rehash arguments I have already considered and addressed, sometimes repeatedly.

SkyWest first argues that my decision to deny its various eleventh-hour appeals for further discovery on front pay issues was prejudicial. SkyWest first raised the allegation of inadequate discovery in its response to Mr. Hayes's motion for additional monetary awards, including front pay. Although SkyWest characterized this request as "narrow," it in fact was quite broad, seeking an additional ninety days to discover not only "the status of Plaintiff's health circumstances, his ability to work, his work status and compensation, and his efforts to continue to mitigate his damages," but also "to seek discovery from Plaintiff's employers or those from whom he has sought employment." (**Defendant SkyWest Airlines, Inc.'s Response to Plaintiff's Motion for Additional Monetary Awards** at 9 [#204], filed March 14, 2018.) I denied that request because, in addition to being procedurally improper under D.C.COLO.LCivR 7.1(d), it was substantively groundless:

> [SkyWest] plainly could have anticipated front pay would be an issue were plaintiff to prevail on any one of his claims in this lawsuit. Its failure to take adequate discovery on that issue prior to the discovery deadline is unexplained and inexcusable.

(**Order Re: Plaintiff John Hayes' Motion for Additional Monetary Awards** at 7 n.10 [#220], filed July 2, 2018.)

Having determined Mr. Hayes was entitled to front pay, I set an evidentiary hearing to determine front pay for September 4, 2018.  (***See id.*** ¶ 4 at 15.)  Less than two weeks before the date scheduled for the hearing, SkyWest filed a motion seeking a ninety-day continuance on the ground that it had become aware that Mr. Hayes recently had received a kidney transplant.  (**Motion for Continuance of September 4, 2018 Hearing and Motion for Leave To Conduct Additional Discovery** [#221], filed August 23, 2018.)  Concluding SkyWest had not been diligent in seeking this discovery (as it had been on notice since the inception of the case that Mr. Hayes ultimately would require, and had long been awaiting, a kidney transplant), I found further that the issues as to which SkyWest claimed it required discovery were either addressed by the information already provided in anticipation of the hearing and/or could adequately be explored on cross-examination.[22]  (***See* Order Denying Motion for Continuance of September 4, 2018 Hearing and Motion for Leave To Conduct Additional Discovery** at 2 [#229], filed August 29, 2018.)

Thus, procedurally, I find, as I did previously (albeit implicitly), that SkyWest has waived any right to complain about the inadequacy of its front pay discovery.  ***See United States v. Carrasco-Salazar***, 494 F.3d 1270, 1272 (10th Cir. 2007) ("[W]aiver is the intentional relinquishment of a known right.") (quoting ***United States v. Olano***, 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993)) (internal quotation marks

---

[22]  For example, SkyWest claimed it needed information as to "when Mr. Hayes had the procedure, how he is recovering, how long he will need to recover, and whether he is experiencing any complications."  (**Motion for Continuance of September 4, 2018 Hearing and Motion for Leave To Conduct Additional Discovery** at 3 [#221], filed August 23, 2018.)

omitted).  It therefore is not entitled to review at all, even for plain error.  *See id.*; *United States v. Hardwell*, 80 F.3d 1471, 1487 (10th Cir. 1996), *reh'g granted in part on other grounds*, 88 F.3d 897 (10th Cir. 1996).

Moreover, I find nothing in SkyWest's present arguments that convince me that it was error, let alone prejudicial error, to deny its discovery requests. For example, there was no perceivable prejudice in failing to allow SkyWest to take discovery of Mr. Hayes's post-termination efforts to mitigate his damages by obtaining other employment, as defense counsel explored these issues at length at the hearing.[23] SkyWest fails to specify how this opportunity was inadequate, and as I subsequently found, most of this evidence was irrelevant to the issue of front pay in any event.  (*See* **FOF & COL** at 3 n.3.)  As for the supposed lack of information regarding Mr. Hayes's long-term health prospects following his kidney transplant, to the extent such matters are even knowable,[24] the fact that Mr. Hayes's present doctors released him to work just shortly after the date of front pay hearing suggested by at least a preponderance of the evidence that his future employment prospects were bright.

SkyWest next argues I should not have used the job at Simplicity as a benchmark for front pay because Mr. Hayes could not perform the lifting requirements of that job.  Although the written job description purports to require lifting of up to

---

[23]  The hearing, originally scheduled for a single afternoon, stretched well into a second day because of these efforts.

[24]  Certainly, nothing prevented SkyWest from endorsing and calling a kidney transplant specialist of its own to vet the determinations of Mr. Hayes's doctors.  That it instead elected to call Mr. Hayes's *former* kidney doctor, who made plain on the stand that he was not qualified to offer opinions regarding the more specialized field of kidney transplantation, to SkyWest's apparent surprise, seems to belie any suggestion that it was diligent in investigating these issues.

seventy pounds, which was beyond Mr. Hayes's restrictions at the time he might have been hired by Simplicity (Front Pay Hrg. Tr. at 47), Mr. Hopkins testified that someone with Mr. Hayes's restrictions nevertheless could perform the job by seeking assistance from other employees.  (Front Pay Hrg. Tr. at 17 (discussing training on "team lifts").)  In addition, Mr. Hopkins averred he still would have recommended Mr. Hayes for that position despite his lifting restrictions.  (Front Pay Hrg. Tr. at 70.)

Nor do I find persuasive SkyWest's related contention that Mr. Hayes's entitlement to front pay ended when he accepted employment with UGE.  This argument is based on SkyWest's facile assumption that Mr. Hayes was incapable of performing any type of work after UGE placed him on medical leave.  I have rejected this proposition already, finding that but for SkyWest's illegal discrimination and retaliation, Mr. Hayes would have been working for Simplicity in conditions that were within his medical restrictions, which was not the case at UGE.  (**FOF & COL** at 12.) Nor is there any basis for SkyWest's assumption that Simplicity would have terminated Mr. Hayes's employment if he had been forced to take a lengthy medical leave.[25]  If anything the evidence at the front pay hearing was to the contrary.  (**See** Front Pay Hrg. Tr. at 38-40.)

Finally, SkyWest contests the amount of front pay awarded.  It first challenges my finding that plaintiff's work-life expectancy extended to age 65.  This argument is

---

[25]  SkyWest's continued reliance on **Hwang v. Kansas State University**, 753 F.3d 1159 (10th Cir. 2014), for the proposition that an employer is not obligated to grant leave of more than six months to reasonably accommodate an employee under the ADA misses the mark because it again assumes, against all the evidence in this case, that Mr. Hayes could not work in any position or capacity.  **See id.** at 1162 (employer not required to provide six-month paid leave of absence where during the period, plaintiff "could not work from home, part-time, or in any way in any place").

based on SkyWest's now-familiar refrain that plaintiff's hypothetical working life absent SkyWest's discrimination and retaliation should be measured either by the position he held at the time he was placed on leave by SkyWest, which ended in December 2014, or alternatively by the Pilot Recruiter position he sought but was denied, which was eliminated in January 2018. As should be plain by this point, I do not find either of these positions to be an appropriate benchmark for plaintiff's post-SkyWest career path. As I have said repeatedly, but for SkyWest's illegal discrimination and retaliation against him, Mr. Hayes most likely would have been hired by Simplicity, where he had the potential for a career stretching at least to standard retirement age.

In related arguments, SkyWest urges (1) that Mr. Hayes's recovery of front pay should be delimited by the amount of his wages while employed by SkyWest; and (2) should be cut off all together because he found employment comparable to that he held at SkyWest after he was terminated. As none of these positions paid anywhere near the same salary plaintiff would have earned had he been employed by Simplicity, I reject these arguments as well.

I likewise reject SkyWest's suggestion that it was error to assume Mr. Hayes will never move to full-time employment with UGE, given the current, much-improved state of his health. As I noted in ruling on the issue of front pay, Mr. Hayes testified credibly and without contradiction that there were no prospects for a full-time position at UGE. (**FOF & COL** at 10 n.13.) Moreover, without the network of contacts in Memphis that he enjoyed in Denver, Mr. Hayes's ability to find better employment in Memphis is drastically curtailed. (*Id.* at 11.) Nor does the prospect of Mr. Hayes applying for and

securing a job with Simplicity in Denver now convince me that his front pay award should be reduced.  Again, I addressed this very issue in my findings of fact and conclusions of law, finding that Mr. Hayes could not be faulted for failure to mitigate by relocating yet again while his wife still held a good-paying job in Memphis.  (**See id.** 11 n.14, 15.)

In sum, SkyWest has not shown the type of manifest error of law or mistake of fact that would warrant a new front pay hearing under Rule 59(a)(1)(B).

## IV.  ORDERS

For these reasons, SkyWest's motion for new trial must be denied in all its particulars.

**THEREFORE, IT IS ORDERED** that **Defendant's Motion for New Trial** [#265], filed October 24, 2018, is denied.

Dated July 19, 2019, at Denver, Colorado.

BY THE COURT:

Bob Blackburn

Robert E. Blackburn
United States District Judge